## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

|  |  |  |
|---|---|---|
| KENNETH EUGENE SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  2:23-cv-00656-RAH |
| | ) | |
| JOHN Q. HAMM, | ) | |
| Commissioner of the Alabama | ) | |
| Department of Corrections, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| TERRY RAYBON, Warden, | ) | |
| Holman Correctional Facility, | ) | |
| | ) | |
| Defendants. | ) | |

## Defendants' Reply to Plaintiff Smith's Response
## to Defendants' Motion to Dismiss (Doc. 44)

## INTRODUCTION

Defendants have steadfastly maintained that Smith's second amended complaint fails to provide non-conclusory factual pleadings sufficient to satisfy the requirements of Federal Rule of Civil Procedure 8. Smith's latest filing only strengthens Defendants' position. That is, Smith says he "challenges the *Protocol* that Defendants intend to use to conduct his execution by nitrogen hypoxia" (Doc. 44 at 11), but the Constitution confers no right to granularly detailed execution protocols. Smith's complaint is premised on the purported "absence of critical

details" in the Protocol. (*Id.* at 38.) But such allegations of absence are "merely consistent with a defendant's liability," and "stop[] short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). If the Protocol called for actions that created a substantial risk of superadded pain, Smith would have a stronger claim. But merely alleging that the Protocol should provide additional details does not make Smith's claims plausible.

Smith contends that this Court should forgive his speculation and failure to plead non-conclusory factual grounds because some details "are in the Defendants' sole possession." (Doc. 44 at 13.) But federal courts require the pleading of *factual* allegations, either "on information and belief" or "based on factual information that makes the inference of culpability plausible" in such circumstances. *See, e.g.*, *Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 59 F.4th 948, 954 (8th Cir. 2023) (and the cases cited therein). As the Court noted in *Iqbal*, "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." 556 U.S. at 678–79.

The "question presented by a motion to dismiss a complaint for insufficient pleadings does not turn on the controls placed upon the discovery process." *Id.* at 684–85 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007)). Thus,

2

pleading requirements are not relaxed in the face of judicially guaranteed "minimally intrusive discovery," *id.* at 686, meaning this Court's expedited discovery order cannot alter the legal standard that must be applied to Defendants' motion to dismiss. If Smith's complaint is deficient under Rule 8, then "he is not entitled to discovery, cabined or otherwise." *Id*. Smith's complaint should be dismissed.

## I.    Smith's Response Concedes That His Equal Protection Claim Is Barred, Fails to State a Claim, and Is Subject to Dismissal.

Smith's response fails to address the *Rooker-Feldman* issue argued in the Defendants' motion to dismiss and opposition to the motion for a preliminary injunction. While Smith contends that "ADOC has brought Mr. Smith to the front of the line" (Doc. 44 at 13), that baseless allegation, unsupported by facts or law, cannot substitute for the reality that Smith's execution will be the result of a decision the Alabama Supreme Court issued on November 1, 2023, in accordance with Alabama law, as conceded by the second amended complaint. (Doc. 31 ¶ 73). If Smith's argument, now that he has dropped the due process component of his first claim, "is that equal protection demands that he be excluded entirely from the formal queue until he is allowed, as others on Alabama's death row were allowed, to fully complete his conventional appeals, and even then, not be moved ahead of those inmates who exhausted their appeals much earlier" (Doc. 44 at 13–14), then the Alabama Supreme Court was the judicial body to which he should have presented that claim, and it remains the judicial body that decided that the appropriate time had

arrived for his sentence to be carried out. *See* ALA. R. APP. P. 8(d). This Court is not at liberty to find that the relevant authority "lies somewhere other than where the applicable law purports to put it." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988).

Smith's claim asks this Court to determine whether the Alabama Supreme Court got it wrong—i.e., whether Smith has been placed at the wrong spot in the "formal queue" for execution—and therefore is a case "brought by [a] state-court loser[] complaining of injuries caused by [a] state-court judgment[] rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industr. Corp.*, 544 U.S. 280, 284 (2005). If the Alabama Supreme Court erroneously moved Smith forward in the "formal queue," then federal review of that Court's decision lies with the United States Supreme Court. *Id.* at 285 (discussing *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983)). Even if, as Smith alleges, the Alabama Supreme Court should not have determined it the appropriate time for execution of his sentence, "lower federal courts possess no power whatsoever to sit in direct review of state court decisions." *Atl. Coast Line R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 296 (1970).

Smith's failure to address application of the *Rooker-Feldman* doctrine also means he has provided no explanation as to why the "chain of causation" required

for a valid § 1983 claim was not broken by the Alabama Supreme Court's decision. Considering that "the appropriate time" for authorizing Smith's execution is established by state law and assigned to the Alabama Supreme Court, his execution date is not the direct result of an official action by Defendants or by ADOC. Again, this Court cannot shift liability to Defendants for the State's legal request for an execution date if Alabama law places that responsibility elsewhere, *Praprotnik*, 485 U.S. at 124, and it cannot shift responsibility for the decision to authorize Smith's execution to Defendants, *Barts v. Joyner*, 865 F.2d 1187, 1195 (11th Cir. 1989).

Smith's response makes disposition of the first cause of action simple in another way. He contends "that equal protection demands that he be excluded entirely from the formal queue until he is allowed, as others on Alabama's death row were allowed, to fully complete his conventional appeals, and even then, not be moved ahead of those inmates who exhausted their appeals much earlier." (Doc. 44 at 13–14.) But last week, Smith gave notice to this Court (Doc. 43) of the Alabama Court of Criminal Appeals' decision that his successive Rule 32 petition was "insufficiently pleaded and meritless." (Doc. 43-1 at 5, 13.)[1]

The result of Smith's rule would be patently absurd. Any inmate could indefinitely forestall his execution by filing an unending string of successive Rule

---

[1] As of this filing, the case remains in the Alabama Court of Criminal Appeals. Smith filed an application for rehearing on December 11, which the court overruled shortly before 9 a.m. today.

32 petitions. That is why Alabama has executed or sought to execute other inmates with second or successive postconviction petitions pending. (Doc. 39 at 27 (and cases cited therein).)[2] Thus, even if this Court could overlook the fact that Smith is challenging the propriety of the Alabama Supreme Court's decision to have his execution date set, the Prison Litigation Reform Act requires this Court to recognize that Smith is being treated no differently than other condemned inmates who have had their executions carried out despite pending second or successive postconviction claims.

As to Defendants' argument that Smith failed to plead discriminatory intent, Smith responds that "the very fact that ADOC scheduled Mr. Smith for execution by nitrogen hypoxia *first*—even though he has appeals pending and other similarly situated inmates have long had their appeals exhausted—itself is evidence of a discriminatory intent, and is arbitrary and capricious on its face." (Doc. 44 at 22–23.) This only reinforces Defendants' right to dismissal on judicial estoppel grounds. Nitrogen hypoxia is the very relief he sought in this Court just *months* ago. If Smith

---

[2] Smith counters, "Those facts are not alleged in the SAC." (Doc. 44 at 19.) True, but the Court's inquiry under the PLRA is broader than Rule 12(b)(6), including matters of which a court may take judicial notice. *Wells v. Brown*, 58 F.4th 1347, 1357 n.2 (11th Cir. 2023) (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)). This Court and federal appellate courts take judicial notice of their own dockets, state-court records and dockets stored in online databases, and the dockets of other federal courts. *See, e.g.*, *Brown v. Bd. of Ed.*, 344 U.S. 1, 3 (1952) (per curiam); *Samra v. Taylor*, 38 F.4th 141, 143 n.1 (11th Cir. 2022) (citing *United States v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987) ("A court may take judicial notice of its own records and the records of inferior courts."); *Turner v. Sec'y, Dep't of Corr.*, 991 F.3d 1208, 1212 (11th Cir. 2021); *Paez v. Sec'y, Dep't of Corr.*, 947 F.3d 649, 651–52 (11th Cir. 2020).

is allowed to maintain that Defendants discriminate against him by providing the relief he secured *from this Court*, it will be clear the judiciary has been manipulated.

Finally, Smith responds that his first cause of action is not subject to claim preclusion because the State's request for authority to execute his sentence postdates his original complaint. (Doc. 44 at 23.) But Smith's prayer for relief seeks a "preliminary and permanent injunction prohibiting Defendants from executing Mr. Smith by nitrogen hypoxia *until he has exhausted his pending appeals or, alternatively, a stay of execution pending completion of Mr. Smith's appeals*." (Doc. 31 at 34 (emphasis added).) Those appeals were pending at the time *Smith* sought the injunctive relief granted, yet he did not seek to protect his rights at that time. If Smith did not believe that claim to be properly before the Court then, he has failed to show why it is properly before the Court now.

Smith's prayer for relief essentially asks this Court to use its injunctive powers to protect the jurisdiction of state courts to review his appeal, by way of acting as an "appellate authority." But if Smith faces "the threat of immediate irreparable injury sufficient to justify an injunction under usual equitable principles," then because of his pending state appeal, "[he] is undoubtedly free to seek such relief from the [Alabama] appellate courts, and might possibly in certain circumstances seek such relief from th[e Supreme] Court as well. *Atl. Coast Line R. Co.*, 398 U.S. at 296. Unlike this Court, "[the Supreme] Court does have potential appellate jurisdiction

over federal questions raised in state court proceedings, and that broader jurisdiction allows [that] Court correspondingly broader authority to issue injunctions 'necessary in aid of its jurisdiction.'" *Id*. In other words, Smith cannot use meritless claims before a different court to get a stay from this Court. And because this Court cannot exercise its injunctive powers to protect the jurisdiction of the Supreme Court and Alabama's state courts, Smith's first cause of action should be dismissed.

## II. Smith's Claims Predicated on the Protocol Are Implausible, Speculative, and Due to Be Dismissed.

Smith's allegations about the mask, the purity of nitrogen, the pulse oximeter, and vomiting cannot support a claim for relief. Smith's mantra—"there is nothing in the Protocol" (Doc. 44 at 35, 36, 39, 58)—fundamentally misunderstands his burden to plead plausible facts about what will happen on January 25, 2024. It is not ADOC's burden (under the Eighth Amendment, First Amendment, or any other federal law) to produce a protocol that answers every question Smith might raise; the absence of some provision in the protocol, which serves as a useful agency tool for the agency's own needs, does not license the inference that the worst-case scenario will occur or that ADOC will take the worst possible action for Smith. As Smith's response demonstrates, every one of his allegations makes implausible assumptions rather than alleging plausible facts that, if true, would support relief.

First, Smith repeats his conditional allegation that "if oxygen can infiltrate the mask," he faces "a severe risk" of "being left in a persistent vegetative state,

experiencing a stroke, or…suffocation." (Doc. 44 at 34 (quoting Doc. 31 ¶ 85). Oxygen can infiltrate, he says, due to "anatomic characteristics," "movement," and "speaking." (Doc. 44 at 35). There's no plausible claim here because the Eighth Amendment requires, inter alia, evidence of a *substantial risk* to the inmate. *Bucklew*, 139 S. Ct. at 1127. The mere possibility of risk—present in any method of execution—is not enough.

Smith must have alleged a substantial risk that "anatomic characteristics" (such as "nose structure, facial hair, obesity") will permit oxygen infiltration. He has not. Nor has Smith alleged that *he* has any of those characteristics. And his claim that mere movement or speaking will pose a substantial risk of oxygen infiltration is facially implausible. Smith must also have alleged a substantial risk that such characteristics or actions will permit oxygen infiltration to such a degree that it will cause the alleged harms. He has not done that, either. Nor has he specified what volume of oxygen or what level of leakage are substantially likely to cause the harms short of death or alleged that the Protocol will permit oxygen to move at such a volume or level. This Court is free to reject (and should reject under the PLRA) such absurd assertions such as that the entrapment of any *oxygen* into the mask will cause "the painful sensation of suffocation." Smith's complaint offers no facts, general or otherwise, to explain how oxygen or room air increases a risk of stroke.

Even if Smith had pleaded specific plausible facts on any of these points, he

would have to plead that the conjunction of his predictions will result in a substantial risk of severe pain to him. He did not.

Likewise, Smith's allegations that the protocol does not "indicate that there are any criteria to determine whether the mask is sealed or that any member of the execution team is trained" (Doc. 44 at 26) cannot support a claim for relief. Even if true that the protocol does not specify "criteria" or "training," the absence of such details in the protocol poses no substantial risk of severe pain.

Second, Smith repeats that "[t]here is nothing in the Protocol that indicates that there is any mechanism to vent carbon dioxide." (*Id.* at 35.) Again, that does not mean that there is, in fact, no venting mechanism.[3] The (unsurprising) fact that the Protocol does not describe every internal mechanism of the mask does not render plausible Smith's allegation that the mask lacks a certain feature.

Third, Smith's complaint still does not allege that ADOC's supply of nitrogen gas is impure or that facts and circumstances exist making the conditions of storage likely to lead to some unspecified type of contamination of that gas.

Fourth, and for the same reasons, Smith's allegation that "there are no procedures for monitoring the pulse oximeter *after* nitrogen flows" (*Id.* at 36

---

[3] To see that such allegations about the protocol are inadequate, consider that merely amending the Protocol *to disclose* certain details would not change anything about the State's method. Whether, for example, ADOC's mask contains a mechanism for removing carbon dioxide and other waste gases would be unaffected by an amendment disclosing that the mask does or does not contain such a mechanism.

(quoting Doc. 31 ¶ 94)) is not an allegation that can support an Eighth Amendment claim. Whether "oxygen is infiltrating the mask" is an alleged risk unaffected by whether ADOC discloses such procedures. (*Id.*) Smith has not plausibly alleged that ADOC will place and secure a pulse oximeter on him and then decline to monitor it, causing a substantial risk of "dire consequences." (*Id.*)

Fifth, Smith defends his allegation that the protocol "fails to provide procedures for a condemned person who vomits." (*Id.*) This fails for the same reason and for the additional defect that it relies on a speculative chain of events not rising to the level of a substantial risk. Smith has not alleged that he is substantially likely to vomit; he has not even alleged that he has previously vomited due to his PTSD. He has not alleged that he is substantially likely to vomit at the precise time that the mask is placed *after* the nitrogen begins flowing but *before* unconsciousness, that his vomit is substantially likely to cause him to choke, and that his choking is substantially likely to cause him severe pain before unconsciousness. Nor has he alleged that such predictions, together, amount to a substantial risk of severe pain that could be significantly reduced by a feasible alternative.

The burden to plead a plausible factual basis for this claim is, and always has been, on Smith. He must plead "allegations plausibly suggesting (not merely consistent with)" his worst-case-scenario assumptions about the protocol. *See Twombly*, 550 U.S. at 557. There is nothing in the second amended complaint that

even attempts to meet this requirement.

This Court is not bound to accept conclusory allegations, and his assumptions cannot push his claims from speculative to plausible. Instead, the Court is required to consider "more likely explanations," such as that the Protocol does not contain information unnecessary to establishing the procedures for conducting an execution. *Iqbal*, 556 U.S. at 681 ("Taken as true, these allegations are consistent with petitioners' purposefully designating detainees 'of high interest' because of their race, religion, or national origin. But given more likely explanations, they do not plausibly establish this purpose."). For example, the Protocol does not explicitly specify that the condemned inmate will be given clean water or breathable air reasonably free from contaminants or irritants during his time inside the observation cell prior to his execution, but such allegations alone would not permit the Court to find that Defendants intend to deprive Smith of his constitutional rights.

A.   **If Smith's allegations of substantial risk are adequate, then his allegations proposing an alternative method are inadequate, and his claim fails.**

Further, to the extent that the absence of such information in the Protocol might support Smith's claim, he must have pleaded that his proposed alternative would *significantly* reduce the alleged risk. If these are adequately pleaded and cognizable risks, then Smith's failure to include *the very same information* regarding his proposed alternative—e.g., a mask that explicitly accounts for facial hair,

obesity, etc.; a mask with a mechanism to remove carbon dioxide; a way "to ensure" 100% pure nitrogen delivery; procedures for monitoring a pulse oximeter after nitrogen flows; and complete procedures for a condemned person who vomits—must be fatal to his claim.

But the second amended complaint does not identify any specific mask that could be used as an alternative to ADOC's mask, much less one that meets Smith's "custom fit" requirement or "possess[es] a mechanism to remove carbon dioxide that the condemned person exhales from under the mask." (Doc. 27 ¶ 102) If it is actionable that ADOC's Protocol does not specify the commonsense fact that the mask used prevents carbon dioxide rebreathing, for example, then Smith's failure to plead the existence of a mask meeting those same requirements—and thereby substantially reducing the risk of harm identified in the second amended complaint—renders his alternative method "theoretically 'feasible'" but not "'readily implemented.'" *Bucklew v. Precythe*, 139 S. Ct. 1112, 1129 (2019) (quoting *Glossip v. Gross*, 576 U.S. 863, 877 (2015)). Thus, the second amended complaint alleges what ADOC should do, but it does not plead facts that, if true, establish that ADOC could implement Smith's alternative method, as it does not represent that a mask meeting all of Smith's requirements actually exists.

### B. Smith's reaffirmance of his position that nitrogen hypoxia is "novel and experimental" and "untested" requires dismissal.

Smith's response doubles down on his attempted reliance on the fact that

nitrogen hypoxia has not previously been used to conduct a judicial execution. (Doc. 44 at 23 ("[Nitrogen hypoxia] indisputably is all those things; it has 'never been used [anywhere] to carry out an execution and ha[s] no track record of successful use.' *Bucklew*[,] 139 S. Ct. [at] 1130").) But in the passage from *Bucklew* that Smith quotes, the Court observed that the failure to point to a proven alternative method, or seeking the adoption of an entirely new method, are appropriate and legitimate reasons for prison officials to reject a prisoner's proposed alternative. "Choosing not to be the first to experiment with a new method of execution is a legitimate reason to reject it." *Bucklew*, 139 S. Ct. at 1130.

If Smith alleges that ADOC's Protocol is "novel and experimental" and "untested" because nitrogen hypoxia has not been employed as a method of execution, then it must also be true that his (unspecified) alternative mask and (unspecified) procedures and changes to the Protocol are untested, novel, and experimental. If asked to choose between the method ADOC spent years implementing and training to carry out and the short-on-facts alternative offered by Smith as a means of staving off his execution, Defendants have a legitimate reason for declining to switch from ADOC's protocol to add bare-bones ideas Smith concocted in a period of a few months. Considering Smith's bluster that ADOC's Protocol "was hastily introduced" (Doc. 31 at 3), his own admission that his response to the Protocol is based on "due diligence" that was ongoing on September 19, 2023

(Doc. 44 at 12), can only create concerns that his non-specified alternatives are being "very hastily introduced." Smith cannot substitute his rushed ideas for ADOC's plan on the basis that *both* are experimental and untested. Thus, a fair reading of Smith's pleadings illustrates that even he would agree that Defendants would have a legitimate reason to reject his rushed alternatives to their Protocol.

Smith's emphasis on nitrogen hypoxia's "novel and experimental" status makes clear that his second amended complaint seeks to have this Court decide between his inadequately pleaded method developed over a few weeks and ADOC's Protocol. But the Constitution "does not authorize courts to serve as 'boards of inquiry' charged with determining 'best practices' for executions. *Bucklew*, 139 S. Ct. at 1125 (quoting *Baze v. Rees*, 553 U.S. 35, 51–52 & nn.2–3 (2008)). Under existing law, Smith has failed to plead facts sufficient to show that this Court will be performing any act the constitution allows, rather than setting up a "board of inquiry" to implement what Smith alleges are "best practices" for executions. As a matter of comity and federalism, this Court must decline Smith's invitation.

### C.   That ADOC may possess certain facts does not excuse inadequate pleading.

The fact that certain details are held by ADOC does not excuse Smith for failing to meet the requirements of Rule 8. (*See* Doc. 44 at 39.) As noted in *Iqbal*, "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a

plaintiff armed with nothing more than conclusions." 556 U.S. at 678–79. Smith was required to establish facts showing that his concerns are legitimate and based on plausible factual grounds, and he did not do so. Because this Court cannot point to well-pleaded factual components of Smith's second amended complaint establishing a valid Eighth Amendment claim, his second claim for relief is due to be dismissed. The same goes for Smith's other claims predicated on the same factual assumptions (but not plausible allegations) about the protocol, the mask, and the gas.

### III. Smith's Second Amended Complaint and Response to Defendants' Motion to Dismiss the RLUIPA Count Makes Clear He Is Not Alleging That Government Conduct Burdens His Religious Practices.

Smith's theory is that ADOC's use of its mask "is akin to significant pressure which directly coerces [him] to conform his behavior" because "it forces him into the untenable choice of praying audibly, which risks dislodging the mask with dire consequences, or abstaining from audible prayer." (Doc. 44 at 42 (quoting *Thai Meditation Ass'n of Ala., Inc. v. City of Mobile, Ala.*, 83 F.4th 922, 927 (11th Cir. 2023).) In response to this claim, Defendants have assured Smith that his fears are unreasonable, implausible on their face, and unfounded. To that, Smith responds that because "the Protocol does not say anything about carbon dioxide, ports, valves, or what type of mask will be used" (Doc. 44 at 42–43), and because he is concerned about whether ADOC will properly place the mask, *he* is worried, and *he* thinks he faces an untenable choice.

But the Protocol *does* say that Smith will be allowed to exercise his religion with a spiritual advisor inside the execution chamber and that his mask will be inspected for proper fit and placement prior to the start of the flow of nitrogen. The fact that Defendants will require Smith (who, again, elected execution by nitrogen hypoxia) to wear a mask capable of delivering breathing gases does not place a *direct* burden on his sincerely held religious belief pertaining to audible prayer at the time of his execution, especially when Smith agrees that a mask (though an alternative mask) should be used to conduct such an execution. Aside from alleging that ADOC's mask will prevent him from being heard,[4] Smith admits that any burden on his ability to pray audibly is the result of his speculative concerns and would be the result of voluntary inaction.

Moreover, Smith's complaint expressly pleads that "the Protocol contemplates that the condemned will be permitted to make a statement after the mask is placed over his face" and that "the inmate will be able to speak after it is in place." (Doc. 31 ¶ 12.) Therefore, Smith's complaint forecloses the notion that he will be unable to speak, including by offering audible prayer.

Thus, Smith relies on speculation about the risks of speaking while wearing a mask. But as addressed above, Smith has not pleaded facts that would make it

---

[4] If Smith's RLUIPA claim is narrowed to this issue, then this claim can easily be resolved at the evidentiary hearing on December 20.

plausible that ADOC will select a defective mask.

In sum, Smith has not pleaded any nonspeculative facts to establish either side of the supposed dilemma Defendants would put him in. He has not shown that he will be unable to speak audibly, but has instead recognized that the Protocol contemplates inmates speaking audibly while wearing the mask. And the complaint's assertion that the mask will dislodge or allow buildup of carbon dioxide (presumably at greater levels from talking than from remaining silent)  are not supported by nonspeculative facts.

Smith cites *Holt v. Hobbs*, 574 U.S. 352 (2015), to support his RLUIPA cause of action, but there, it was undisputed that if the "petitioner contravenes th[e prison's beard] policy and grows his beard, *he will face serious disciplinary action* [by prison officials]." *Id.* at 351. Here, if Smith chooses to engage in audible prayer at the time of his execution, he will face no consequences or adverse responsive actions from ADOC officials (other than reassessment of his mask's placement, as stated in the Protocol). Smith's unfounded speculation about the adequacy of the Protocol's provisions cannot make the Defendants liable for a RLIUPA violation.

Smith does not contend that Defendants' use of a mask to carry out his execution "completely prevents [him] from engaging in religiously mandated

activity,"[5] *see Midrash Shephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004), merely that *he* might *choose* not to pray audibly because he does not believe Defendants' representations that audible prayer will not adversely affect the mask's performance (Doc. 31 ¶ 136; Doc. 44 at 42–43). For their part, Defendants have done nothing but assure Smith that he will be fine (and heard) if he wishes to pray audibly at the time of his execution. From the standpoint of official action, ADOC has done nothing but attempt to empower Smith to be able to engage in audible prayer.

Pleading and proof of a "'substantial burden' requires something more than an incidental effect on religious exercise." *Midrash Shephardi, Inc.*, 366 F.3d at 1227. Instead, it must be a "significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly." *Id*. But as noted above, there is no allegation that Defendants have tried to hinder Smith's ability to pray audibly.

In short, while Defendants will require Smith to wear a mask in the minutes leading up to the execution of his death sentence, they will not do anything to discourage him from praying audibly if that is what he wishes to do. A fair reading of the second amended complaint and Smith's response to the motion to dismiss establish that any burden that might prevent Smith from engaging in audible prayer

---

[5] Again, to the extent Smith's assertions that ADOC's mask will not permit him to be heard, that narrow aspect of this claim can easily be resolved at the December 20 hearing if the Court does not dismiss this claim pursuant to Defendants' motion to dismiss.

is the product of Smith's unfounded fears, not the result of any burden created or imposed by Defendants. As such, Smith has failed to state a claim upon which relief may be granted.

## IV. Smith's ARFA Claim Is Subject to the Anti-Injunction Act And Otherwise Fails.

Without citing any legal authority, Smith's response baldly asserts, "The Anti-Injunction Act does not apply [to Smith's ARFA claim] because Mr. Smith is not seeking an injunction 'to stay proceedings in a State court.'" (Doc. 44 at 45.) But the Anti-Injunction Act bars federal courts from enjoining efforts to enforce a state court *judgment* in the same way as it bans efforts to enjoin an ongoing state-court proceeding. *See, e.g.*, *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623 (1977); *see also Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518, 525 (1986) ("Even if the state court mistakenly rejected respondents' claim of res judicata, this does not justify the highly intrusive remedy of a federal-court injunction against the enforcement of the state-court judgment."). As the Supreme Court has described the term "proceedings" in the context of the Anti-Injunction Act's prohibition against stays of "proceedings in any court of a State":

> That term is comprehensive. It includes all steps taken or which may be taken in the state court or by its officers from the institution to the close of the final process. It applies to appellate as well as to original proceedings; and is independent of the doctrine of res judicata. It applies alike to action by the court and by its ministerial officers; *applies not only to an execution issued upon a judgment,* but any proceeding supplemental or ancillary taken with a view to making the

suit or judgment effective.

*Hill v. Martin*, 296 U.S. 393, 403 (1935) (footnotes omitted). Smith's opinion about what a "proceeding" is cannot trump this binding precedent.

Because this Court cannot use its supplemental or pendant jurisdiction to evade the Anti-Injunction Act, Smith is not entitled to a preliminary injunction on ARFA grounds. Further, his ARFA claim should be dismissed for the same reason his speculative RLIUPA and First Amendment claims should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Smith's second amended complaint should be granted.

Respectfully submitted,

Steve Marshall
*Attorney General*


**s/ Richard D. Anderson**
Richard D. Anderson
*Assistant Attorney General*

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2023, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which will send notification of such filing to the following: **Angelique A. Ciliberti, Ashley Brook Burkett, Jeffrey Hutton Horowitz, Robert M. Grass,** and **Andrew Burns Johnson.**


                                        *s/ Richard D. Anderson*
                                        Richard D. Anderson
                                        *Assistant Attorney General*

ADDRESS OF COUNSEL:

Office of the Attorney General
Capital Litigation Division
501 Washington Avenue
Montgomery, AL 36130
Office (334) 353-2021
Fax (334) 353-8400
Richard.Anderson@AlabamaAG.gov