IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| KENNETH EUGENE SMITH, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JOHN Q. HAMM, in his official ) <br> Capacity as Commissioner, Alabama ) <br> Department of Corrections, and ) <br> ) <br> TERRY RAYBON, in his official ) <br> Capacity as Warden, Holman ) <br> Correctional Facility, ) <br> ) <br> Defendants. ) | Case No. 2:23-cv-00656-RAH <br><br> CAPITAL CASE <br><br> **EXECUTION SCHEDULED FOR JANUARY 25, 2024** |

**PLAINTIFF KENNETH EUGENE SMITH'S
COMBINED REPLY IN SUPPORT OF MOTION TO COMPEL AND
MOTION TO STRIKE THE OPINIONS OF DR. JOSEPH ANTOGNINI**

Plaintiff Kenneth Eugene Smith hereby replies in support of his motion to compel responses to his discovery requests (Doc. 41), and relatedly, moves to strike the opinions of Dr. Joseph Antognini, who Defendants disclosed as a retained expert on December 15 (Doc. 52), but have not provided a written statement of his opinions, as required by Federal Rule of Civil Procedure 26.

1

## REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL

In their Objection to Plaintiff's Motion to Compel Responses (Doc. 48), Defendants repeat their position that (1) information about the development of their protocol to execute Plaintiff by nitrogen hypoxia (the "Protocol") is irrelevant, and (2) even if relevant, the development of the Protocol is protected by the deliberative process privilege. Defendants have withheld information from Mr. Smith, based on these arguments, concerning the development of the Protocol in the "pre-decisional period" before its final adoption on August 25, 2023. (*See* Ex.1 (Hamm Dep.) at 39:3–14.) But Defendants have applied that limitation only when it helps them—they *expressly rely on* information from the so-called "pre-decisional period."

That is not the way the discovery rules work—Defendants cannot have it both ways. Their position also is legally untenable in any event.

**I.     Defendants' time limitation is inconsistent—they themselves rely on information from the "pre-decisional" time period.**

Defendants contend that information pre-dating the adoption of the nitrogen hypoxia Protocol—a novel execution method that has never been attempted anywhere in the world—is "completely irrelevant to this lawsuit" because, they argue, "whether [they] relied upon some document in the past has no bearing on whether the protocol will superadd pain or burden Smith's religious exercise." (Doc. 48 at 3). Their position is inconsistent with their own reliance materials.

2

For example, Defendants have produced, and relied on, a document that was prepared for an Oklahoma legislator when that state was considering using nitrogen gas as an execution method back in 2015. (Ex. 2.) By virtue of their production of that document, which recommends the use of nitrogen for that purpose, Defendants must have relied on the document in developing their Protocol. And Defendants' new expert, Dr. Antognini, performed an analysis before August 25, 2023, which Defendants now rely on, and in which he likewise relied on pre-decisional information, for his opinions in this case. (Ex. 3.) So Defendants rely on information and materials developed before August 25, 2023 when it helps them and resist discovery of "pre-decisional" information and materials on relevance grounds when they believe that it does not help them. They cannot have it both ways.

Defendants have resisted discovery into what information from before August 25, 2023, that they relied on, which means that they also have refused to explain how, if at all, they considered and responded in their Protocol to the significant limitations to the use of nitrogen gas that are identified even in the "pre-decisional" materials on which they rely. In the Oklahoma document, the authors reported that the trend in using nitrogen (or helium) as a "method of human euthanasia" was "toward using an 'exit bag' filled with an inert gas such as nitrogen or helium" (Ex. 2 at 6), but cautioned "that deviations from the above protocols have not always been as successful" (*id.* at 7):

3

> When masks were placed over the face (instead of using bags of helium over the head) it has been reported some problems have occurred. This is typically the result of the mask not sealing tightly to the face, resulting in a small amount of oxygen being inhaled by the individual. This extends the time to become unconscious and extends the time to death.

Defendants' position is also inconsistent with the analysis that Dr. Antognini performed and the information he relies on for his opinions in this case. He relies on a medical journal article examining four cases of assisted suicide by oxygen deprivation using helium delivered via a face mask. *See* Russel D. Ogden, et al., *Assisted suicide by oxygen deprivation with helium at a Swiss right-to-die organisation*, 36 J. Med. Ethics 174 (2010) (attached as Exhibit 4). The authors concluded that for the purpose of assisted suicide, "[o]xygen deprivation with a face mask is not acceptable because leaks are difficult to control and it may not eliminate rebreathing." (*Id.*) The authors explained that those "factors will extend time to unconsciousness and time to death." (*Id.*) Notably, time to death for one participant in the study was over 40 minutes. Nothing in the text of the unredacted Protocol adequately addresses this risk. Plaintiffs are entitled to discover whether Defendants were aware of the risks and what alternatives they considered, if any, to mitigate it. Potential flaws of this nature in the Protocol expose Plaintiff to "a severe risk of a persistent vegetative state, a stroke, or the painful sensation of suffocation, i.e., superadded pain." (Doc. 31 at 31).

4

**II.     The development of the Protocol is intrinsically linked to whether it poses a risk of substantial injury short of death.**

Defendants' position also makes no sense and disregards fundamental principles of cause and effect. The development of the Protocol is intrinsically linked to its performance, the risks that were identified and assessed during development, and analysis regarding alternative processes and equipment that were considered by the State. This information falls well within the broad definition of relevant information under Federal Rule of Civil Procedure 26.

As Defendants themselves have noted, "[a] method-of-execution challenge is a 'comparative exercise.'" (Doc. 39 at 69). Here, the relevant comparison is not only between execution by nitrogen hypoxia and a different method of execution, but also between different methods of execution by nitrogen hypoxia. Plaintiff has presented feasible and available alternatives to Defendants' Protocol, such as using a closed space or a hood instead of a mask to deliver nitrogen. (Doc. 31 at 27) Plaintiff is entitled to know whether Defendants considered these alternatives for accomplishing execution by nitrogen hypoxia and, if so, why they rejected those alternatives in favor of the procedures in the Protocol, including the perceived risks and benefits of each potential alternative. And Plaintiff is entitled to know whether or not (and how) Defendants incorporated the various identified limitations and risks of using nitrogen gas for such a purpose.

Fundamentally, Defendants' arguments, if accepted by this Court and others, would leave no path forward for the full development of allegations related to written execution protocols, whether with regard to matters explicitly included in or not sufficiently addressed by that protocol. Plaintiff's Eighth Amendment claim cannot be fully addressed without evaluation of this evidence and the opportunity to question and cross examine the Defendants' witnesses with this information. It is clearly relevant to the claims and defenses at issue in this matter.

### III. The deliberative process privilege does not apply to documents relating to the development of an execution protocol.

Defendants alternatively contend that the information, documents, and testimony relating to the development of the Protocol is protected under the deliberative process privilege. (Doc. 48 at 5). That argument likewise fails to shield information from discovery because (1) Defendants have waived the privilege; (2) they have failed to carry their burden of showing the privilege applies; and (3) Plaintiff's interest in disclosure of the information outweighs Defendants' interest in withholding the information.

### A. Defendants have waived the deliberative-process privilege.

The deliberative process privilege does not apply to the documents covered in Request for Production No. 7, which asks for documents prepared by or shared with a *third party*. Any disclosure to a non-governmental third party was a waiver by

Defendants of the deliberative process privilege. *See*, *e.g.*, *Equal Emp. Opportunity Comm'n v. W. Customer Mgmt. Grp., LLC*, 2014 WL 12479614, at *2 (N.D. Fla. Jan. 21, 2014) ("Where an authorized disclosure is voluntarily made to a non-federal party, the government waives any claim that the information is exempt from disclosure under the deliberative process privilege.").

Further, Defendants also have now waived the privilege through the positions they have taken in this litigation. Defendants contend—and have refused to produce documents and answer questions on this basis—that only the current version of the Protocol is what matters, and that anything from before its August 25, 2023 enactment is irrelevant. (Doc. 48 at 3; *see also* Defs.' 30(b)(6) Deposition (Cynthia Stewart), Ex. 5 at 33).[1] But Defendants have offered testimony from Dr. Antognini in support of their position in this case, and in both his declaration and deposition testimony, Dr. Antognini testified that he ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Antognini Dec. at ¶ 18). In other words, he conducted his evaluation *pre-decision*.

As part of Dr. Antognini's pre-decisional evaluation, he ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

---

[1] Plaintiff is filing under seal the rough-draft transcript (the only version presently available) of Ms. Stewart's December 14, 2023 deposition, in an abundance of caution in light of the presence of "highly confidential" information in this case. Plaintiff has redacted information in the public filing accordingly.

███████████████████████████████████ (*Id.*) He also ███████████

████████████████████████████████████████████

███████████████████ (*Id.*) The substance of Dr. Antognini's declaration, and Defendants' reliance on it, is significant because Defendants have relied on the very thing they now claim is irrelevant: information about the development of the Protocol (Dr. Antognini's evaluation of the nitrogen system came nine days before ADOC adopted the Protocol).

Defendants cannot selectively rely on certain information related to the Protocol's development and then claim deliberative-process privilege for everything else. Defendants have put the Protocol's development at issue in this case, and Mr. Smith is entitled to all similar information, not just those documents or snipets of information Defendants have selectively chosen to introduce.

    **B.    Plaintiff's discovery requests are for factual, not deliberative, materials, which do not relate to policy formulation at the highest levels of government.**

Defendants bear the burden to prove the privilege applies. *See Sanders v. Ala. State Bar*, 161 F.R.D. 470, 474 (M.D. Ala. 1995) (holding that deliberative process privilege did not apply to memoranda and investigative reports generated by Alabama State Bar's counsel). So, they must establish that any withheld information is both "(1) pre-decisional, i.e., prepared in order to assist an agency decisionmaker in arriving at his decision, and (2) deliberative, i.e., a direct part of the deliberative

8

process in that it makes recommendations or expresses opinions on legal or policy matters." *Fla. House of Representatives v. U.S. Dep't of Commerce*, 961 F.2d 941, 945 (11th Cir. 1992) (internal citations and quotation marks omitted). Defendants have failed to meet their burden to show that withheld information is "deliberative."

Materials are deliberative only if they are "a direct part of the deliberative process in that they make recommendations or express opinions on legal or policy matters." *Broward Bulldog, Inc. v. U.S. Dep't of Justice*, 939 F.3d 1164, 1195 (11th Cir. 2019) (quotation marks and alterations omitted). That is, materials are deliberative only if they directly both relate to policy formation, and form that policy determination at the **highest levels of government**. *Jones v. City of College Park, Ga.*, 237 F.R.D. 517, 520 (N.D. Ga. 2006). The privilege does not exist to shield all decision-making by public officials. *Morales v. Woodford*, 2006 WL 8434981, at *2 (N.D. Cal. May 2, 2006). *See also Jones*, 237 F.R.D. at 520; *Scott v. Board of Educ. Of City of East Orange*, 219 F.R.D. 333, 337 (D.N.J. 2004); *Burka v. New York City Transit Auth.*, 110 F.R.D. 660, 667 (S.D.N.Y. 1986). Indeed, the standard articulated above necessarily excludes factual materials and operating decisions made by government agencies in carrying out established policy. *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1263 (11th Cir. 2008). Information that is not shielded by the deliberative-process privilege includes records and communications regarding the development of an execution protocol,

which relate to the to the *implementation* by corrections officials of the State's policy choice to allow executions by nitrogen hypoxia, not the formulation of that policy at the higher levels of government.

Contrary to Defendants' argument (Doc. 48 at 10–11), it does not matter that the development of the Protocol might have involved ADOC officials to consider competing options or exercise analytical judgment. As noted above, competing options to deliver nitrogen are a central issue in Mr. Smith's Eighth Amendment claim. Courts consistently decline to apply the privilege to materials reflecting routine agency decision-making. *See Kelly v. City of San Jose*, 114 F.R.D. at 655 (police department cannot invoke privilege to withhold "manuals, policy statements, memoranda or any other documents that discuss arrest techniques or use of force by police officers in effecting arrests"); *Mitchell v. Fishbein*, 227 F.R.D. 239, 251 (S.D.N.Y. 2005) (no deliberative process privilege for documents related to a "routine" decision whether to recertify or decertify an attorney); *White v. New York City Health & Hospital Corp.*, No. 88 Civ 7536 (LBS), at *22 (S.D.N.Y. 1990) (discussions by personnel officer and security officer about nature and enforcement of identification requirements for hospital personnel cannot be deemed "deliberative processes of government").

Nor does it matter that Defendants view their policy implementation as "controversial and scrutinized" (*see* Doc. 48 at 10)—that implementation process

10

still is factual, and "factual materials do not become privileged merely because they represent a summary of a larger body of information." *Broward Bulldog, Inc.*, 939 F.3d at 1195 (quotation marks omitted). Factual materials become privileged only if they "would reveal the deliberative process or where the factual material is so inextricably intertwined with the deliberative material that meaningful segregation is not possible." *Miccosukee Tribe*, 516 F.3d at 1265. The withheld materials here are neither.

Nothing in Mr. Smith's requests seek information relating to whether and under what circumstances the State can and should execute, or even whether the State should adopt nitrogen hypoxia as a method of execution—both policies were set by the Alabama legislature in 2018 when it authorized the use of nitrogen hypoxia in executions. How ADOC chooses to develop the Protocol for carrying out an execution by nitrogen hypoxia reveals nothing about how the State determined nitrogen hypoxia was an acceptable method of execution or who it could or would execute via that method. Thus, the privilege is not applicable to the deliberations of the agency in developing the Protocol to carry out and administer this authorized execution method.

### C. The Defendants' interest in asserting the privilege is outweighed by Mr. Smith's interest in disclosure.

Even so, the deliberative-process privilege is not absolute. *See*, *e.g.*, *Citizens to Preserve Overton Park Inc. v. Volpe*, 401 U.S. 402, 420 (1971) (permitting inquiry of administrative decisionmakers), abrogated on other grounds, *Califano v. Sanders*, 430 U.S. 99 (1977); *see also Commissioner v. Advance Local Media*, 918 F.3d 1161 (11th Cir. 2019). Even where it would otherwise cover requested discovery, the privilege will not apply if the plaintiff's interest in the information outweighs the government's interest in non-disclosure. *Sanders*, 161 F.R.D. at 474 (finding that deliberative process privilege did not apply where plaintiff's "interest in reviewing the investigatory reports and memoranda . . . outweighs the state bar's interest in non-disclosure").

Defendants' unremarkable argument that *Morales v. Woodford*, 2006 WL 8434981 (N.D. Cal. May 2, 2006), is not binding on this Court misses the point—the *Morales* court's reasoning on this very question is both sound and persuasive. As that court explained, "the need for accurate fact-finding in answering the question of whether [the state's execution] protocol comports with the Constitution outweighs Defendants' insufficiently asserted desire to keep such deliberations secret." *Id*. at *2. Plaintiff's constitutional rights being asserted in this case are of paramount importance and outweigh Defendants' interests in hiding behind the privilege by

12

refusing to disclose most of the information they relied in developing the Protocol, which simultaneously disclosing that very information when it supports their position.

### IV. Defendants remaining objections are boilerplate in violation of this Court's order on discovery.

Finally, Defendants' third and fourth objections regarding attorney-client privilege and the supposed burdensome nature of Plaintiff's discovery requests are precisely the sort of "frivolous, conclusory, general, meritless, or boilerplate objections" this Court cautioned Defendants against in its order on discovery (Doc. 28 at 4).

## MOTION TO STRIKE THE OPINIONS OF DR. JOSEPH ANTOGNINI

The Court should strike Defendants' designated expert witness, Dr. Joseph Antognini. For one thing, the designation came too late. Defendants included nothing from Dr. Antognini in their opposition to Plaintiff's preliminary injunction motion or their motion to dismiss. And, practically, Defendants' disclosure of Dr. Antognini's declaration is a paradigmatic eleventh-hour filing: Defendants first provided Plaintiff with the declaration at 10:43 PM CST on December 14, 2023— *i.e.*, late the night before Dr. Antognini's deposition was set for December 15.

Moreover, there a fundamental fairness problems with allowing Defendants to rely on this last-minute disclosure. Dr. Antognini's declaration (1) relies on

13

material Defendants did not allow Plaintiff to discover through written discovery and depositions, and are, in fact, objecting to in the context of Plaintiff's motion to compel, as explained above; (2) relies on inspections of equipment and demonstrations to which Plaintiff's expert was not allowed access; and (3) was withheld until after the limited inspection permitted to Plaintiff's expert was complete.

Defendants have been stalling—they provided Dr. Antognini's declaration only at the last second, just hours before his deposition. But the Attorney General's office first contacted Dr. Antognini, about working as an expert, in the Fall of 2021, and they retained him in August 2022. Since then, he has been supplied drafts of the Protocol pre-dating its adoption, unspecified testing data to review, and he has witnessed demonstrations of Defendants' nitrogen delivery system and observed equipment and facilities that comprise it—none of which have been made available to Plaintiff and his experts, despite multiple requests.

Dr. Antognini's evaluation of the nitrogen system at Holman predates not only the adoption of the Protocol but also the State's August 25, 2023 motion to the Alabama Supreme Court for an order authorizing ADOC to execute Plaintiff by nitrogen hypoxia. It is also entirely intertwined with the information that Defendants claim is privileged under the deliberative process.

For example, Dr. Antognini was allowed to examine ███████████ ██████████████████████████████████████████████████ ████████████████████████████ (Antognini Dec. at ¶ 18.) He also ████ ██████████████████████████████████████████████████ █████ (*Id*.) Dr. Antognini was provided with far greater access to the nitrogen hypoxia system than Plaintiff's expert was permitted—the mask alone in the execution chamber.

In addition, Dr. Antognini opines on the results of █████████████ ████████████████████████ purportedly ██████████████████████ █████████████████████████████████ (*Id*. at ¶ 24.) Plaintiff was not privy to that demonstration; he did not even know that he was subject to execution by nitrogen hypoxia when that demonstration occurred. Nor have Defendants produced video of that demonstration or any underlying documents that supposedly confirm the results that Dr. Antognini reports.

Moreover, his declaration directly responds to opinions provided by Plaintiff's expert witnesses in their declarations, which had been available to him since November 20, 2023. Thus, Dr. Antognini had more than three weeks to analyze Plaintiff's expert declarations when drafting his own declaration, based in part on his extensive examination of Defendants' nitrogen system four months ago. In sharp contrast, Plaintiff's experts received Dr. Antognini's declaration late the night before

15

his deposition and only six days before the scheduled evidentiary hearing, without any accompanying access to Defendants' nitrogen system that even remotely matched the extensive access granted to Dr. Antognini. Once again, Defendants cannot have it both ways.

## CONCLUSION

For the foregoing reasons, this Court should grant Mr. Smith's motion to compel responses to his discovery requests under Federal Rule of Civil Procedure 37(a) and exclude the opinions of Dr. Joseph Antognini.

/s/ *Andrew B. Johnson*
Andrew B. Johnson (ASB: 8504-r76j)
BRADLEY ARANT BOULT CUMMMINGS LLP
1819 Fifth Avenue North
Birmingham, Alabama 35203
(205) 521-8000
ajohnson@bradley.com

Jeffrey H. Horowitz (NY Bar No. 3949070)
David A. Kerschner (NY Bar No. 5126420)
Robert M. Grass (NY Bar No. 2501278)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
(212) 836-8000
jeffrey.horowitz@arnoldporter.com
david.kerschner@arnoldporter.com
robert.grass@arnoldporter.com

Angelique Ciliberti (ASB: 1504-T44C)
ARNOLD & PORTER KAYE SCHOLER LLP

>
> 601 Massachusetts Ave, NW
> Washington, DC 20001-3743
> (202) 942-5000
> angelique.ciliberti@arnoldporter.com
>
> *Attorneys for Plaintiff Kenneth Eugene Smith*

## CERTIFICATION PURSUANT TO RULE 37

Pursuant to Federal Rule of Civil Procedure 37(a)(1), I certify that counsel for Mr. Smith has conferred with Defendants' counsel in a good faith effort to resolve the issue presented in this discovery motion without Court intervention.

>
> */s/ Andrew B. Johnson*_____
>              Of Counsel

17

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2023, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification to participating counsel.

              ____*/s/ Andrew B. Johnson*_____
                    Of Counsel