# Exhibit A

# E-Filing Submission Confirmation

The following electronic filing(s) were successfully submitted.  Please keep a copy of this confirmation for your records.

**Submitted Date**              12-18-2023 12:49 PM
**E-File Confirmation No.**     24681702925343230

**Filings Submitted:**

| Court | Case Number | Filing Type(s) | Documents | Fees |
|-------|-------------|----------------|-----------|------|
| Supreme Court of Alabama | | Filing - Petition for Writ of Certiorari | 1 | $ 0.00 |
| Total | | | | $ 0.00 |

No. 23-_____

IN THE SUPREME COURT OF ALABAMA

KENNETH EUGENE SMITH, *Petitioner*

*v.*

STATE OF ALABAMA.

On Petition for a Writ of Certiorari to the
Alabama Court of Criminal Appeals, No. CR-2023-0594

On Appeal from the Circuit Court of Jefferson County,
No. CC-1989-001149.61

## PETITION FOR WRIT OF CERTIORARI

Ashley Burkett
Angelique Ciliberti
ARNOLD & PORTER KAYE
  SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
(202) 942-5000
ashley.burkett@arnoldporter.com
angelique.ciliberti@arnoldporter.com

Andrew B. Johnson
BRADLEY ARANT BOULT
  CUMMINGS, LLP
1819 Fifth Avenue North
Birmingham, Alabama 35203
(205) 521-8000
ajohnson@bradley.com

*Attorneys for Appellant Kenneth Eugene Smith*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

DECISION TO BE REVIEWED ................................................................. 1

PROCEEDINGS BELOW ......................................................................... 1

REASONS TO GRANT THE WRIT .......................................................... 3

I.   The Court of Criminal Appeals' Opinion Conflicts With U.S. Supreme Court Decisions Articulating The Legal Standard Governing Second Execution Attempts. ........................................... 5

II.  The Court of Criminal Appeals' Opinion Conflicts With Alabama Supreme Court and Alabama Court of Criminal Appeals Decisions Regarding The Pleading Standard For Rule 32 Petitions. ................................................................................ 7

   A.   The Court of Criminal Appeals' decision conflicts with its prior precedent requiring that unrefuted factual allegations be accepted as true. ........................................................... 8

   B.   The Court of Criminal Appeals' opinion conflicts with Alabama Supreme Court precedent holding that a Rule 32 petitioner need only plead a clear and specific statement of the grounds for relief. ................................................. 12

III. This Court Should Decide As A Matter Of First Impression That The Alabama Constitution Prohibits A Second Execution Attempt Following A Series of Abortive Attempts Or One Cruelly Willful Attempt. .................................................. 15

CONCLUSION .......................................................................................... 15

i

# TABLE OF AUTHORITIES

**Cases**                                                     **Pages**

*Baze v. Rees,*
  553 U.S. 35 (2008) .......................................................................... 4, 6, 7

*Ex parte Beckworth,*
  190 So.3d 571 (Ala. 2013) ............................................................... 7, 12

*Dobbey v. Ill. Dep't of Corrs.,*
  574 F.3d 443 (7th Cir. 2009) ............................................................... 11

*Farmer v. Brennan,*
  511 U.S. 825 (1994) ............................................................................. 13

*La. ex rel. Francis v. Resweber,*
  329 U.S. 459 (1947) (Frankfurter, J., concurring) ..................... 4, 5, 6, 7

*McBurnett v. State,*
  266 So.3d 122 (Ala. Crim. App. 2018) .................................................. 8

*Pizzuto v. Tewalt,*
  1:23-cv-00081, 2023 WL 4901992 (D. Idaho Aug. 1, 2023) ................ 11

*Smith v. Hamm,*
  No. 2:22-cv-497, 2023 WL 4353143 (M.D. Ala. July 5,
  2023) ...................................................................................................... 9

*Smith v. State,*
  620 So.2d 732 (Ala. Crim. App. 1992) ................................................... 2

*State v. Adams,*
  91 So.3d 724 (Ala. Crim. App. 2010) ................................................... 11

**Other Authorities**

Ala. R. App. P. 39 ....................................................................................... 3

Ala. R. App. P. 39(a)(1)(C) .................................................................. 4, 15

Ala. R. App. P. 39(a)(1)(D) ................................................................ 4, 5, 7

Alabama Constitution Article I, § 15........................................3, 4, 14, 15

Alabama Rule of Criminal Procedure 32........................................ *passim*

John D. Bessler, *Taking Psychological Torture Seriously: The Torturous Nature of Credible Death Threats and the Collateral Consequences for Capital Punishment* ..............................10

U.S. Constitution, Eighth Amendment .......................................... *passim*

## DECISION TO BE REVIEWED

Kenneth Eugene Smith petitions for a writ of certiorari for this Court to review the decision of the Alabama Court of Criminal Appeals dated December 8, 2023, attached as Exhibit A, which affirmed the dismissal of Mr. Smith's Second Petition for Relief from his Death Sentence under Alabama Rule of Criminal Procedure 32 without a hearing. Mr. Smith's Petition seeks to vindicate his right to be free from cruel and unusual punishment under the U.S. and Alabama Constitutions in the State's planned second attempt to execute him after its failed first attempt in November 2022—the third execution in a row that was aborted or botched for the same reason: an inability to set intravenous (IV) lines. Mr. Smith's Petition was based solely on facts that arose, and could not have been asserted before, the State's failed execution attempt in November 2022. The Court of Criminal Appeals overruled Mr. Smith's Application for Rehearing on December 15, 2023, in an order attached as Exhibit B.

## PROCEEDINGS BELOW

Mr. Smith was indicted in Colbert County for capital murder in 1988. Exhibit C ⁋ 1. In light of prejudicial pretrial publicity, the circuit court transferred venue to Jefferson County. *Id.* ⁋ 2. In 1996, Mr. Smith

1

was convicted of capital murder. *Id.* ⁋ 3. Although the jury recommended by a vote of 11 to 1 that Mr. Smith be sentenced to life imprisonment without the possibility of parole, the trial court overrode that recommendation and sentenced Mr. Smith to death. Exhibit C, ⁋ 3.

In September 2022, this Court scheduled Mr. Smith's execution by lethal injection for November 17, 2022. *Id.* ⁋⁋ 10-11. But the State, through the Alabama Department of Corrections (ADOC), failed to execute Mr. Smith on the scheduled date because it was unable to set IV lines. *Id.* ⁋⁋ 12, 31-32. ADOC's multiple unsuccessful attempts to do so caused Mr. Smith severe and ongoing physical and psychological pain. *Id.* ⁋⁋ 12-13, 34-36.

On May 12, 2023, Mr. Smith filed a Rule 32 Petition in the Circuit Court of Jefferson County seeking relief as a result of the State's failed execution attempt. Mr. Smith alleged that his was the third straight execution that ADOC botched or failed to complete because of its inability to place IV lines in the inmate. *Id.* ⁋ 22. ADOC did nothing after the first two to investigate what happened or why, or make any effort to prevent a recurrence when it attempted to execute Mr. Smith. *Id.* ⁋⁋ 22, 26. Mr. Smith asserted that, given the superadded pain to which ADOC

subjected him in November 2022 and ADOC's deliberate indifference to his constitutional rights—as demonstrated by its failure to investigate the cause of the two botched executions immediately preceding his—a second attempt to execute him by any method would violate his right to be free from cruel and unusual punishment under the Eighth Amendment to the U.S. Constitution and Article I, § 15 of the Alabama Constitution.  *Id.* ¶¶ 17, 26-30.  The circuit court granted the State's motion to dismiss the Petition without holding an evidentiary hearing, and the Court of Criminal Appeals affirmed the dismissal without hearing oral argument.  The Court of Criminal Appeals overruled Mr. Smith's application for a rehearing, and this petition follows.[1]

### REASONS TO GRANT THE WRIT

This Court should grant Mr. Smith's petition for writ of certiorari because the Alabama Court of Criminal Appeals' decision directly conflicts with multiple precedents governing both the scope of the Eighth Amendment's prohibition on cruel and unusual punishment and the pleading standard for Rule 32 petitions.  *See* Ala. R. App. P. 39(a)(1)(D).

---

[1] Pursuant to Ala. R. App. P. 39, the Statement of Facts presented to the Court of Criminal Appeals when Mr. Smith sought rehearing is verified and attached as Exhibit D.

Most importantly, the Court of Criminal Appeals' opinion failed to acknowledge, much less apply, the correct legal test to Mr. Smith's Eighth Amendment claim: that a State's successive attempt to execute a condemned person after "a series of abortive attempts or even a single, cruelly willful attempt" is prohibited. *La. ex rel. Francis v. Resweber*, 329 U.S. 459, 471 (1947) (Frankfurter, J., concurring); *Baze v. Rees*, 553 U.S. 35, 50 (2008) (plurality op.). And because the Court of Criminal Appeals' decision disregarded the correct legal standard, it also failed to recognize that Mr. Smith's Petition pleaded unrefuted factual allegations that provide a clear and specific statement of the grounds for relief, which— as this Court has made clear—is all that is required at the pleading stage.

While those errors alone are a sufficient basis for granting certiorari and reversing the Court of Criminal Appeals' decision, there is another, independent basis for granting certiorari: the question whether Article I, Section 15 of the Alabama Constitution prohibits a second execution attempt under the circumstances alleged in Mr. Smith's Petition is one of first impression. *See* Ala. R. App. P. 39(a)(1)(C).

## I.   The Court of Criminal Appeals' Opinion Conflicts With U.S. Supreme Court Decisions Articulating The Legal Standard Governing Second Execution Attempts.

The writ of certiorari should be granted under Alabama Rule of Appellate Procedure 39(a)(1)(D) because the Court of Criminal Appeals' opinion conflicts with U.S. Supreme Court decisions setting forth the legal standard that governs whether a second execution attempt violates the Eighth Amendment.  That standard originated from *Resweber*, where a plurality of the U.S. Supreme Court held that "an unforeseeable accident" caused by a "failure of equipment" that resulted in a failed attempt to execute a condemned person by electrocution did not preclude a second attempt.  329 U.S. at 463-64.  In a concurring opinion, Justice Frankfurter (who provided the decisive fifth vote) noted that, unlike the "innocent misadventure" at issue in *Resweber*, "a series of abortive attempts at [execution] or even a single, cruelly willful attempt," would preclude another attempt under the U.S. Constitution.  *Id.* at 470-71 (Frankfurter, J., concurring).

Since *Resweber*, the U.S. Supreme Court has confirmed that the distinction between a failed execution that follows from an "unforeseeable accident," 329 U.S. at 464, and one that follows from a

"series of abortive attempts . . . or a single, cruelly willful attempt," *id.* at 471 (Frankfurter, J., concurring), determines whether multiple attempts to execute a condemned person would violate the Eighth Amendment. *Baze*, 553 U.S. at 50. The Court in *Baze* explained that "'a series of abortive attempts at [execution]' . . . unlike an 'innocent misadventure'—would demonstrate an 'objectively intolerable risk of harm' that officials may not ignore" because it "prevents [them] from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.'" *Id.* (quoting *Resweber*, 329 U.S. at 470-71 (Frankfurter, J., concurring)).

The Court of Criminal Appeals' opinion neither acknowledges nor applies the critical distinction set forth in *Baze*. Instead, the Court of Criminal Appeals, citing *Resweber*, reasoned that because it was not "cruel and unusual punishment to execute an inmate who has been subjected to a current of electricity in a previous failed execution attempt," then a second execution attempt after a failure to set IV lines "certainly" is not cruel and unusual. Exhibit A at 11. But whether the failed attempt involved electric current or the setting of IV lines is not the correct comparison. The correct comparison is whether the failed execution was an "unforeseeable accident" instead of a "series of abortive

attempts . . . or a single, cruelly willful attempt." *Baze*, 553 U.S. at 50; *Resweber*, 329 U.S. at 470-71 (Fraunkfurter, J., concurring).[2]   In failing to recognize or apply the correct legal standard, the Court of Criminal Appeals' opinion directly conflicts with the U.S. Supreme Court's decisions in *Baze* and *Resweber*.

## II.   The Court of Criminal Appeals' Opinion Conflicts With Alabama Supreme Court and Alabama Court of Criminal Appeals Decisions Regarding The Pleading Standard For Rule 32 Petitions.

The writ of certiorari also should be granted under Alabama Rule of Appellate Procedure 39(a)(1)(D) because the Court of Criminal Appeals' opinion conflicts with decisions from both this Court and the Alabama Court of Criminal Appeals defining the pleading standard that governs Rule 32 petitions.  Specifically, this Court has held that "at the pleading stage, a petitioner must only provide 'a clear and specific statement of the grounds upon which relief is sought.'"  *Ex parte*

---

[2] The Court of Criminal Appeals also cited a decision from the Ohio Supreme Court in reasoning that "the attempt to execute Smith was aborted and Smith's life was never at risk because the drugs were never administered."  Exhibit A at 12.  But whether the drugs were ever administered is also not the correct comparison.  Again, the correct test is whether the failed execution was an unforeseeable accident, or whether it was either a single cruelly willful attempt or part of a series of abortive attempts—both of which run afoul of the Eighth Amendment.

*Beckworth*, 190 So.3d 571, 575 (Ala. 2013) (quoting Ala. R. Crim. P. 32.6(b)).  Moreover, in determining whether a Rule 32 petitioner has met his pleading burden, "unrefuted allegations in a postconviction petition must be accepted as true." *McBurnett v. State*, 266 So.3d 122, 126 (Ala. Crim. App. 2018) (citations, alterations and quotation marks omitted). The Court of Criminal Appeals' opinion plainly disregards both of those principles.

### A. The Court of Criminal Appeals' decision conflicts with its prior precedent requiring that unrefuted factual allegations be accepted as true.

Instead of accepting Mr. Smith's specific, unrefuted factual allegations as true—as its prior precedent requires—the Court of Criminal Appeals disregarded them as "general assertions" that are "wholly insufficient."  Exhibit A at 9.  They are not.  For example, the court recognized that Mr. Smith alleged that he "suffered physical pain during the November 2022 execution attempt when the execution team 'repeatedly' attempted to insert needles in his arms and hands for 'nearly two hours' and that he had told the team that 'they were penetrating his muscles and causing severe pain.'"  *Id.*

Nonetheless, the court faulted Mr. Smith for not alleging "specifically how many times the team attempted to insert the IV lines, or exactly how long the attempts continued." *Id.* But Mr. Smith *did* allege how long the attempts continued: he alleged that they continued for "nearly two hours." Exhibit C, ⁋ 25. And in faulting Mr. Smith for not counting the precise number of needle sticks that occurred during that long and harrowing experience—one he did not expect to survive— the court failed to recognize and accept as true the unrefuted factual allegations that are in the Petition. Mr. Smith specifically alleged that the IV team "jabbed Mr. Smith repeatedly, sliding the catheter needle continuously in and out of his arms and hands, while ignoring Mr. Smith's complaints that they were penetrating his muscles and causing severe pain." *Id.* ⁋ 31. He further alleged that "[h]aving failed to establish IV access by the standard procedure, the IV Team next tried to do so using a central line procedure." *Id.* ⁋ 32. A federal court has previously found those allegations sufficient to support an Eighth Amendment claim. *See Smith v. Hamm*, No. 2:22-cv-497, 2023 WL 4353143, at *7 (M.D. Ala. July 5, 2023) (concluding that allegations— which went "well beyond merely being pricked subcutaneously over a

9

brief period in an attempt to establish an IV line"—"support a plausible claim of cruel superadded pain as part of the execution").

Moreover, the Court of Criminal Appeals implicitly acknowledged that Mr. Smith specifically alleged that he suffers from post-traumatic stress disorder causing difficulty sleeping, nightmares, hypervigilance, hyperarousal, and disassociation. Exhibit A at 9. It nevertheless concluded that those allegations are not specific enough because Mr. Smith purportedly did not "alleg[e] specific facts regarding how those symptoms arise to the level of a constitutional violation." *Id.* But whether a given set of facts "arise to the level of a constitutional violation" is a legal question. And as Mr. Smith explained in his merits brief to the Court of Criminal Appeals, it is well-accepted that "[t]he modern definition of torture makes clear that torture can be either physical or psychological in nature." John D. Bessler, *Taking Psychological Torture Seriously: The Torturous Nature of Credible Death Threats and the Collateral Consequences for Capital Punishment*, 11 Ne. U. L. Rev. 1, 3 (2019) (emphasis in original).

For example, a federal court recently held that a condemned person stated a plausible Eighth Amendment claim where he alleged that the

10

state "repeatedly re-schedul[ed] his execution despite knowing that they cannot carry it out," which "'series of abortive attempts' at execution amounts to 'psychological torture,'" resulting in "'intense psychological symptoms'" and "mental anguish and torment." *Pizzuto v. Tewalt*, 1:23-cv-00081, 2023 WL 4901992, at *3 (D. Idaho Aug. 1, 2023) (citation omitted).  The court concluded that the defendants' alleged conduct was "like dry firing in a mock execution or a game of Russian roulette," causing the plaintiff to "re-live his last days in a delirium of uncertainty" and "in a state of perpetual terror," which "plausibly constitutes cruel and unusual punishment." *Id*. at *4; *see also Dobbey v. Ill. Dep't of Corrs*., 574 F.3d 443, 445 (7th Cir. 2009) ("Mental torture is not an oxymoron, and has been held or assumed in a number of prisoner cases to be actionable as cruel and unusual punishment . . .—imagine falsely informing a prisoner that he has been sentenced to death. (citation and internal quotation marks omitted.)); *State v. Adams*, 91 So.3d 724, 744 (Ala. Crim. App. 2010) (the prohibition against cruel and unusual punishments in the U.S. and Alabama Constitutions "proscribes more than physically barbarous punishments, it embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency"

(citations and internal quotation marks omitted)).  In refusing to consider or discounting Mr. Smith's detailed factual allegations, the Court of Criminal Appeals contradicted its own decisions requiring that such unrefuted facts be accepted as true at the pleading stage.

> **B.    The Court of Criminal Appeals' opinion conflicts with Alabama Supreme Court precedent holding that a Rule 32 petitioner need only plead a clear and specific statement of the grounds for relief.**

Because the Court of Criminal Appeals failed to acknowledge or apply the proper legal standard, it also failed to recognize the unrefuted factual allegations in the Petition and in so doing, disregarded this Court's precedent holding that a Rule 32 petitioner "must only provide a clear and specific statement of the grounds upon which relief is sought." *Ex parte Beckworth*, 190 So.3d at 575 (quotation marks omitted).  As explained above, the proper question is whether the failed execution was an "unforeseeable accident" instead of a "series of abortive attempts . . . or a single, cruelly willful attempt." *See supra* p. 4-7.  Mr. Smith provided a clear and specific statement of unrefuted facts showing that his failed execution attempt falls into the latter category:

- Mr. Smith's was the third consecutive execution that ADOC botched all for the same reason—its inability to set

intravenous lines in the condemned person.  Exhibit C, ¶¶ 22, 25–27.

- ADOC did no investigation after the first two botched executions and before it attempted to execute Mr. Smith.  *Id.* ¶¶ 22, 27.

- Given the previous two botched executions and ADOC's failure to investigate and remedy their cause, the State personnel responsible for Mr. Smith's attempted execution "knew or should have known . . . that the IV team would have great difficulty establishing IV access, resulting in severe physical and psychological pain to Mr. Smith."  *Id.* ¶ 28.

- They "further knew or should have known" that the same alleged consequences that befell Mr. Miller during and after his failed execution only two months earlier "stated a claim for violation of the right to be free from cruel and unusual punishment guaranteed by the Eighth Amendment to the U.S. Constitution."  *Id.* ¶ 29.

- ADOC nevertheless "recklessly and knowingly charged ahead with deliberate indifference to Mr. Smith's rights and with

the same results." *Id.* ¶ 30; *see also Farmer v. Brennan*, 511 U.S. 825, 828 (1994) ("A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment.").

- And "ADOC's threat to make a second attempt to execute Mr. Smith exacerbates his symptoms and further destabilizes him." Exhibit C, ¶ 36.

Those allegations plainly demonstrate a series of botched and aborted executions that ADOC failed to investigate *before* ADOC's attempt to execute Mr. Smith, which caused him severe and ongoing physical and psychological pain that is exacerbated by ADOC's continuing threat to put him through another execution attempt. In other words, those allegations, taken as true, demonstrate both a "series of abortive attempts" and a "single, cruelly willful attempt." The Court of Criminal Appeals' opinion disregarding those facts conflicts with this Court's decisions holding that a petitioner need only plead a clear and specific statement of the grounds for relief.

### III. This Court Should Decide As A Matter Of First Impression That The Alabama Constitution Prohibits A Second Execution Attempt Following A Series of Abortive Attempts Or One Cruelly Willful Attempt.

Article I, Section 15 of the Alabama Constitution states that "excessive fines shall not be imposed, nor cruel or unusual punishment inflicted," which mirrors the Eighth Amendment to the U.S. Constitution. And although the U.S. Supreme Court has determined that the Eighth Amendment prohibits a second execution attempt following a series of abortive attempts or a single, cruelly willful attempt, whether Article I, Section 15 of the Alabama Constitution also prohibits a second execution attempt in the circumstances alleged here is one of first impression. Accordingly, this Court should grant the writ of certiorari to address that question of first impression, which implicates a foundational right to be free from cruel and unusual punishment at the hands of the State. *See* Ala. R. App. P. 39(a)(1)(C).

### CONCLUSION

This Court should grant certiorari and reverse.

Respectfully submitted,

_/s/ Andrew B. Johnson_____
Andrew B. Johnson
BRADLEY ARANT BOULT
 CUMMINGS, LLP

15

1819 Fifth Avenue North
Birmingham, Alabama 35203
(205) 521-8000
ajohnson@bradley.com

Ashley Burkett
Angelique Ciliberti
ARNOLD & PORTER KAYE
 SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
(202) 942-5000
ashley.burkett@arnoldporter.com
angelique.ciliberti@arnoldporter.com

*Attorneys for Appellant Kenneth Eugene Smith*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(d) of the Alabama Rules of Appellate Procedure, I hereby certify that this petition for writ of certiorari complies with the word limitation of Rules 32(b)(2) and 39(d) of the Alabama Rules of Appellate Procedure.  This petition contains 2,967 words, excluding the parts exempted by Rule 32(c) of the Alabama Rules of Appellate Procedure.

This petition for writ of certiorari complies with the font and type style requirements of Rule 32(a)(7) of the Alabama Rules of Appellate Procedure because it has been prepared using Microsoft Word in Century Schoolbook, font size 14.

_/s/ Andrew B. Johnson_____
Andrew B. Johnson

## CERTIFICATE OF SERVICE

I certify that on the 18th day of December 2023, I filed the foregoing petition for writ of certiorari with the Clerk of the Court, and I served a copy of it on counsel for the State of Alabama, addressed as follows:

Richard D. Anderson
Assistant Attorney General
Richard.Anderson@AlabamaAG.gov

Henry M. Johnson
Assistant Attorney General
Henry.Johnson@AlabamaAG.gov

D. Scott Mitchell, Clerk
Court of Criminal Appeals
300 Dexter Avenue
Montgomery, Alabama 36104

_/s/ Andrew B. Johnson_____
Andrew B. Johnson

# Exhibit A

REL: December 8, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2023-2024

_____

### CR-2023-0594

_____

### Kenneth Eugene Smith

### v.

### State of Alabama

### Appeal from Jefferson Circuit Court
### (CC-89-1149.61)

KELLUM, Judge.

The appellant, Kenneth Eugene Smith, who is currently an inmate incarcerated on death row at Holman Correctional Facility, appeals the circuit court's summary dismissal of his second petition for postconviction relief filed pursuant to Rule 32, Ala. R. Crim. P.

CR-2023-0594

In 1988, Smith was indicted for murdering Elizabeth Dorlene Sennett for pecuniary gain, an offense defined as capital by § 13A-5-40(a)(7), Ala. Code 1975. In 1989, Smith was convicted of that charge and sentenced to death. On appeal, after twice remanding the case to the trial court, this Court found that Smith was entitled to a new trial based on a violation of the holding in Batson v. Kentucky, 476 U.S. 79 (1986). See Smith v. State, 588 So. 2d 561 (Ala. Crim. App. 1991), on return to remand, 620 So. 2d 727 (Ala. Crim. App.), on return to second remand, 620 So. 2d 732 (Ala. Crim. App. 1992).

In 1996, Smith was again convicted of capital murder and sentenced to death. This Court affirmed his conviction and sentence on direct appeal. See Smith v. State, 908 So. 2d 273 (Ala. Crim. App. 2000), writ quashed, 908 So. 2d 302 (Ala.), cert. denied, 546 U.S. 928 (2005). In doing so, we set out the following facts surrounding Smith's conviction:

> "On March 18, 1988, the Reverend Charles Sennett, a minister in the Church of Christ, discovered the body of his wife, Elizabeth Dorlene Sennett, in their home on Coon Dog Cemetery Road in Colbert County. The coroner testified that Elizabeth Sennett had been stabbed eight times in the chest and once on each side of the neck, and had suffered numerous abrasions and cuts. It was the coroner's opinion that Sennett died of multiple stab wounds to the chest and neck.

CR-2023-0594

> "The evidence established that Charles Sennett had recruited Billy Gray Williams, who in turn recruited [Kenneth Eugene] Smith and John Forrest Parker, to kill his wife. He was to pay them each $1,000 in cash for killing Mrs. Sennett. There was testimony that Charles Sennett was involved in an affair, that he had incurred substantial debts, that he had taken out a large insurance policy on his wife, and that approximately one week after the murder, when the murder investigation started to focus on him as a suspect, Sennett committed suicide."

Smith, 908 So. 2d at 280.  Testimony was also presented indicating that Smith had confessed to his part in the murder and had given a detailed account of how he and his codefendant, John Forrest Parker, had obtained access to the victim's home and had beaten and shot her. This Court issued a certificate of judgment on March 18, 2005.

In 2006, Smith timely filed his first Rule 32 petition for postconviction relief, attacking his capital-murder conviction and sentence of death. The circuit court denied that petition, and Smith appealed. After remanding the case three times, twice by opinion, see Smith v. State, 160 So. 3d 40 (Ala. Crim. App. 2010), and once by order, this Court ultimately affirmed, by unpublished memorandum, the circuit court's order denying the petition.

In 2015, Smith filed a petition for a writ of habeas corpus in federal court, alleging that his counsel at his capital-murder trial had been

CR-2023-0594

ineffective.  The federal court denied relief, and that denial was affirmed on appeal.  See <u>Smith v. Commissioner, Ala. Dep't of Corr.</u>, 850 F. App'x 726 (11th Cir. 2021), cert. denied, <u>Smith v. Hamm</u>, ___ U.S. ___, 142 S.Ct. 1108 (2022).

In August 2022, Smith filed in federal court a 42 U.S.C. § 1983 civil action against the Commissioner of the Alabama Department of Corrections, alleging, in part, that the Alabama Department of Corrections ("DOC") "ha[d] substantially deviated from its Execution Protocol to the point that [to execute him] would subject Smith to intolerable pain and torture in violation of the Eighth Amendment." <u>Smith v. Commissioner, Ala. Dep't of Corr.</u>, No. 22-13781, November 17, 2022, (11th Cir. 2022) (not reported in Federal Reporter).  That action was dismissed, and Smith's subsequent request to amend the complaint was denied.  On appeal, the United States Court of Appeals for the Eleventh Circuit remanded the case to allow Smith to amend the complaint.  <u>Id.</u>  In September 2022, while Smith's appeal in the § 1983 action was pending before the Eleventh Circuit Court of Appeals, the Alabama Supreme Court, at the request of the State, set Smith's execution for November 17, 2022.  Smith moved to stay his execution,

CR-2023-0594

but the Alabama Supreme Court denied that motion.  On November 17, 2022, the State could not execute Smith "because []DOC was unable to set intravenous lines through which it could inject Mr. Smith with the lethal drugs." (C. 39.)  Smith's § 1983 action remains pending in federal court.  See Smith v. Hamm, No. 2:22-cv-497-RAH, July 5, 2023, (M.D. Ala. 2023) (not reported in Federal Supplement).

In May 2023, Smith filed a second Rule 32 petition for postconviction relief -- the petition that is the subject of this appeal.  In the 11-page petition, Smith alleged that a second attempt to execute him, by any means, would constitute cruel and unusual punishment in violation of the United States and Alabama Constitutions because, he said, the failed attempt to execute him in November 2022 had "cause[ed] him severe and ongoing physical and psychological distress, including post-traumatic stress disorder." (C. 37.)  The State moved that Smith's petition be dismissed, arguing that his claim was meritless and precluded by Rule 32.2(b), Ala. R. Crim. P., as successive.  Smith filed a written objection to the State's motion.  On August 11, 2023, the circuit court issued an order summarily dismissing Smith's petition, finding that his

CR-2023-0594

claim was insufficiently pleaded.  Smith timely filed a notice of appeal, and this appeal was submitted for decision on November 14, 2023.

On appeal, Smith argues that the circuit court erred in summarily dismissing his petition without first conducting an evidentiary hearing because, he says, his claim is sufficiently pleaded and not precluded as successive.  For the reasons explained below, we agree with the circuit court that Smith's claim was insufficiently pleaded, and we also find the claim to be meritless.  Because we affirm the circuit court's judgment on those grounds, it is unnecessary for us to address whether the claim is precluded as successive.

As noted above, in his petition, Smith alleged that a second attempt to execute him, by any means, would constitute cruel and unusual punishment in violation of the United States and Alabama Constitutions because, he said, the failed attempt to execute him in November 2022 had "cause[ed] him severe and ongoing physical and psychological distress, including post-traumatic stress disorder."  (C. 37.)  Smith alleged that before his attempted execution in November 2022, the State had attempted to execute two other death-row inmates but was unable to do so for the same reason it had failed to execute him in November 2022 --

CR-2023-0594

the inability to insert intravenous ("IV") lines in the inmates. Despite the two previous failed attempts, Smith said, the DOC did no investigation before his November 2022 attempted execution and was forced to abort the November 2022 execution "nearly two hours" after first attempting to insert the IV lines. (C. 43.) Smith then alleged:

> "In an unsuccessful attempt to establish IV lines by the standard procedure, the IV Team jabbed [him] repeatedly, sliding the catheter needle continuously in and out of his arms and hands, while ignoring [his] complaints that they were penetrating his muscles, causing severe pain.
>
> "Having failed to establish IV access by the standard procedure, the IV Team next tried to do so using a central line procedure.
>
> "Sometime before midnight, the IV Team returned to the execution chamber and [he] was informed that the execution had been aborted.
>
> "Mr. Smith continues to be in a great deal of physical and emotional pain from the attempted execution in November.
>
> "[]DOC's failed attempt to execute Smith has had chronically severe psychological consequences, including severe post-traumatic stress disorder. In addition to difficulty sleeping, Smith's symptoms include nightmares, hypervigilance, hyperarousal, and disassociation (a defense mechanism to suppress threatening thoughts)."

(C. 44.)

CR-2023-0594

Rule 32.3, Ala. R. Crim. P., provides that "[t]he petitioner shall have the burden of pleading ... the facts necessary to entitle the petitioner to relief." Rule 32.6(b), Ala. R. Crim. P., requires that the petition "contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings." As this Court noted in Boyd v. State, 913 So. 2d 1113 (Ala. Crim. App. 2003):

> "'Rule 32.6(b) requires that the petition itself disclose the facts relied upon in seeking relief.' Boyd v. State, 746 So. 2d 364, 406 (Ala. Crim. App. 1999). In other words, it is not the pleading of a conclusion 'which, if true, entitle[s] the petitioner to relief.' Lancaster v. State, 638 So. 2d 1370, 1373 (Ala. Crim. App. 1993). It is the allegation of facts in pleading which, if true, entitle[s] a petitioner to relief. After facts are pleaded, which, if true, entitle the petitioner to relief, the petitioner is then entitled to an opportunity, as provided in Rule 32.9, Ala. R. Crim. P., to present evidence proving those alleged facts."

913 So. 2d at 1125.

> "The burden of pleading under Rule 32.3 and Rule 32.6(b) is a heavy one. Conclusions unsupported by specific facts will not satisfy the requirements of Rule 32.3 and Rule 32.6(b). The full factual basis for the claim must be included in the petition itself. If, assuming every factual allegation in a Rule 32 petition to be true, a court cannot determine whether the

CR-2023-0594

> petitioner is entitled to relief, the petitioner has not satisfied
> the burden of pleading under Rule 32.3 and Rule 32.6(b).  See
> <u>Bracknell v. State</u>, 883 So. 2d 724 (Ala. Crim. App. 2003)."

<u>Hyde v. State</u>, 950 So. 2d 344, 356 (Ala. Crim. App. 2006).

Smith alleged generally that he had suffered physical pain during the November 2022 execution attempt when the execution team "repeatedly" attempted to insert needles in his arms and hands for "nearly two hours" and that he had told the team that "they were penetrating his muscles and causing severe pain."  However, he did not allege specifically how many times the team attempted to insert the IV lines, or exactly how long the attempts continued.  He also made only a bare allegation that he "continues" to suffer physical pain, without alleging specific facts describing that pain.  Finally, he made a bare allegation that he suffers from post-traumatic stress disorder causing difficulty sleeping, nightmares, hypervigilance, hyperarousal, and disassociation, without alleging specific facts regarding how those symptoms rise to the level of a constitutional violation.  Smith's general assertions in his petition are wholly insufficient to satisfy his burden of pleading.

CR-2023-0594

Moreover, Smith's claim is meritless.  In <u>Louisiana ex rel. Francis v. Resweber</u>, 329 U.S. 459 (1947), the defendant was sentenced to death, and the State of Louisiana attempted to execute that sentence by use of an electric chair.  "The executioner threw the switch but, presumably because of some mechanical difficulty, death did not result.  [The defendant] was thereupon removed from the chair and returned to prison. ...  A new death warrant was issued by the Governor of Louisiana."  329 U.S. at 460-61.  The defendant then filed a petition for a writ of habeas corpus alleging, in part, that it would be cruel and unusual punishment to subject him to a second execution.  A plurality of the United States Supreme Court rejected the argument, stating:

> "Petitioner's suggestion is that because he once underwent the psychological strain of preparation for electrocution, now to require him to undergo this preparation again subjects him to a lingering or cruel and unusual punishment.  Even the fact that petitioner has already been subjected to a current of electricity does not make his subsequent execution any more cruel in the constitutional sense than any other execution.  The cruelty against which the Constitution protects a convicted man is cruelty inherent in the method of punishment, not the necessary suffering involved in any method employed to extinguish life humanely.  The fact that an unforeseeable accident prevented the prompt consummation of the sentence cannot, it seems to us, add an element of cruelty to a subsequent execution. There is no purpose to inflict unnecessary pain nor any unnecessary pain involved in the proposed execution. The situation of the

CR-2023-0594

> unfortunate victim of this accident is just as though he had
> suffered the identical amount of mental anguish and physical
> pain in any other occurrence, such as, for example, a fire in
> the cell block.  We cannot agree that the hardship imposed
> upon the petitioner rises to that level of hardship denounced
> as denial of due process because of cruelty."

329 U.S. at 464.  If it is not cruel and unusual punishment to execute an

inmate who has been subjected to a current of electricity in a previous

failed execution attempt, then it is certainly not cruel and unusual

punishment to execute an inmate after the failure to insert an IV line in

a previous failed execution attempt.

Indeed, the Ohio Supreme Court so held in State v. Broom, 146 Ohio

St. 3d 60, 51 N.E.3d 620 (2016), in which it rejected an argument that it

would be a violation of the Ohio Constitution to execute Romell Broom

after state officials had been unsuccessful in inserting IV lines in the first

attempted execution.

> "Broom has also sought relief under the Ohio
> Constitution.  Article I, Section 9 of the Ohio Constitution
> provides, 'Excessive bail shall not be required; nor excessive
> fines imposed; nor cruel and unusual punishments inflicted.'
> This court has long held that the Ohio Constitution is a
> 'document of independent force.' Arnold v. Cleveland, 67 Ohio
> St. 3d 35, 616 N.E.2d 163 (1993), paragraph one of the
> syllabus.  The United States Constitution provides a floor for
> individual rights and civil liberties, but state constitutions are
> free to accord greater protections. Id.  And recently, this court
> held for the first time that Article I, Section 9 provides

11

CR-2023-0594

protection 'independent of' the Eighth Amendment.  In re C.P., 131 Ohio St. 3d 513, 2012-Ohio-1446, 967 N.E.2d 729, ¶ 59. But we have also noted that cases involving cruel and unusual punishments are rare, 'limited to those involving sanctions which under the circumstances would be considered shocking to any reasonable person.' McDougle v. Maxwell, 1 Ohio St. 2d 68, 70, 203 N.E.2d 334 (1964).

"When the execution team was unable to establish IV lines, the attempt to execute Broom was halted.  Because the lethal-injection drugs were never introduced into the IV lines, the execution was never commenced.  The state also demonstrated in the executions that were conducted after September 2009 that it is committed to following the protocols as written.  Because Broom's life was never at risk since the drugs were not introduced, and because the state is committed to carrying out executions in a constitutional manner, we do not believe that it would shock the public's conscience to allow the state to carry out Broom's execution. We therefore conclude that Article I, Section 9 of the Ohio Constitution does not bar the state from executing Broom's death sentence."

146 Ohio St. 3d at 73-74, 51 N.E.3d at 633.  Similarly, here, based on

Smith's pleadings in his Rule 32 petition, when the execution team was

unable to insert the IV lines, the attempt to execute Smith was aborted

and Smith's life was never at risk because the drugs were never

administered.  In addition, in Alabama, "[a] death sentence shall be

executed by lethal injection, unless the person sentenced elects to be

executed by electrocution or nitrogen hypoxia." § 15-18-82.1(a), Ala. Code

1975.  In his reply brief, Smith asserts that the State has "moved to

CR-2023-0594

execute [him] using [nitrogen hypoxia]" (Smith's reply brief at p. 5, n.2), and in his § 1983 action in federal court, Smith "sufficiently pleaded that nitrogen hypoxia will significantly reduce his pain." Smith v. Commissioner, Ala. Dep't of Corr., No. 22-13781, November 17, 2022 (11th Cir. 2022) (not reported in Federal Reporter). Accordingly, a second attempt at execution will not be cruel and unusual punishment, and his claim to the contrary is without merit.

Rule 32.7(d), Ala. R. Crim. P., authorizes the circuit court to summarily dismiss a petitioner's Rule 32 petition

> "[i]f the court determines that the petition is not sufficiently specific, or is precluded, or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief under this rule and that no purpose would be served by any further proceedings ...."

See also Hannon v. State, 861 So. 2d 426, 427 (Ala. Crim. App. 2003); Cogman v. State, 852 So. 2d 191, 193 (Ala. Crim. App. 2002); Tatum v. State, 607 So. 2d 383, 384 (Ala. Crim. App. 1992). "Summary disposition is also appropriate when the petition is obviously without merit or where the record directly refutes a Rule 32 petitioner's claim." Lanier v. State, 296 So. 3d 341, 343 (Ala. Crim. App. 2019). Because Smith's claim is insufficiently pleaded and meritless, summary disposition of his Rule 32

13

CR-2023-0594

petition without an evidentiary hearing was appropriate.

For the foregoing reasons, we affirm the circuit court's summary dismissal of Smith's second Rule 32 petition.

AFFIRMED.

Windom, P.J., and McCool, Cole, and Minor, JJ., concur.

# Exhibit B

# ALABAMA COURT OF CRIMINAL APPEALS



December 15, 2023

**CR-2023-0594**

Kenneth Eugene Smith v. State of Alabama (Appeal from Jefferson Circuit Court:
CC-89-1149.61)

## <u>NOTICE</u>

You are hereby notified that on December 15, 2023, the following action was
taken in the above-reference cause by the Court of Criminal Appeals:

Application for Rehearing Overruled.

D. Scott Mitchell, Clerk

# Exhibit C

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

| | | |
|---|---|---|
| **KENNETH EUGENE SMITH** | * | |
| | * | |
| **Petitioner,** | * | |
| | * | |
| **v.** | * | **No. CC 1989-1149-60** |
| | * | |
| **STATE OF ALABAMA,** | * | |
| | * | |
| **Respondent.** | * | |

## SECOND PETITION FOR RELIEF FROM DEATH SENTENCE UNDER ALABAMA RULE OF CRIMINAL PROCEDURE 32

Petitioner Kenneth Eugene Smith, now incarcerated on death row at William C. Holman Correctional Facility ("Holman") in Atmore, Alabama, petitions this Court for relief from his death sentence. The State through the Alabama Department of Corrections ("ADOC") attempted, but failed, to execute Mr. Smith on November 17, 2022, causing him severe and ongoing physical and psychological distress, including post-traumatic stress disorder. Mr. Smith has pending in the United States District Court for the Middle District of Alabama certain federal-law claims, under 42 U.S.C. § 1983, to recover for his injuries and damages arising out of that failed execution attempt, and to prevent the State from attempting to execute him again by lethal injection. But *any* second attempt to execute Mr. Smith, by whatever means, would trigger additional severe psychological distress in violation of his right to be free from cruel and unusual punishment and would itself be a violation of Mr. Smith's rights under the Eighth and Fourteenth Amendments to the United States Constitution and under Article I, § 15 of the Alabama Constitution—particularly because the State's last two attempts to conduct an execution, before the State attempted to execute Mr. Smith in November 2022, had been botched or aborted. This petition raises that separate constitutional claim.

FILED IN OFFICE
CRIMINAL DIVISION

MAY 12 2023

JACQUELINE ANDERSON SMITH
CLERK

1

This is Mr. Smith's second petition seeking relief under Alabama Rule of Criminal Procedure 32. There is good cause to consider and grant this petition because the single ground for relief stated herein was not—and, indeed, could not have been—known to Mr. Smith before his aborted execution in November 2022, which occurred years after the judgment denying his first petition became final in August 2014. Any failure to consider this petition would result in manifest injustice.

In support of his petition, Mr. Smith states the following:

## PROCEDURAL HISTORY

1.      On April 7, 1988, Mr. Smith was indicted in Colbert County for capital murder in violation of Ala. Code § 13A-5-40(a)(7). Vol. 1 at 65–66.

2.      By order dated February 28, 1989, the trial court transferred venue of Mr. Smith's trial to Jefferson County due to prejudicial pretrial publicity. Vol. 7 at 1294–95.

3.      In May 1996, Mr. Smith was convicted of capital murder. Vol. 1 at 113. After a separate penalty phase hearing, the jury recommended by a vote of 11–1 that Mr. Smith be sentenced to life imprisonment without the possibility of parole (Vol. 1 at 114), but the trial court overrode the jury's decision and sentenced Mr. Smith to death (Vol. 1 at 31–37).

4.      Following his direct appeal proceedings, on March 16, 2006, Mr. Smith filed a timely petition for relief from judgment pursuant to Rule 32 of the Alabama Rules of Criminal Procedure in the Circuit Court of Jefferson County. Vol. 31 at 245. On June 1, 2007, Mr. Smith amended his petition. Vol. 32 at 428.

5.      On December 19, 2012, the circuit court entered its final order denying Mr. Smith's Rule 32 petition. Vol. 43 at 117–24.

6.      On March 22, 2013, the Court of Criminal Appeals affirmed that decision.

7.      On August 22, 2014, the Alabama Supreme Court denied Mr. Smith's petition for a writ of certiorari.  Vol. 46 at 126.

8.      On March 3, 2015, Mr. Smith timely petitioned for a writ of habeas corpus in the United States District Court for the Northern District of Alabama.  *See* Petition, *Smith v. Dunn*, No. 2:15-cv-0384, DE 1 (N.D. Ala.).

9.      On September 12, 2019, the district court denied each of the claims Mr. Smith asserted in his habeas petition.  *Smith v. Dunn*, No. 2:15-cv-0384, 2019 WL 4338349 (N.D. Ala. Sept. 12, 2019).  The Eleventh Circuit affirmed, *see Smith v. Comm'r, Ala. Dep't of Corrs.*, 850 F. App'x 726 (11th Cir. 2021), and the United States Supreme Court denied a petition for a writ of certiorari on February 22, 2022, *see Smith v. Hamm*, 142 S. Ct. 1108 (2022).

10.     On June 24, 2022, the State moved in the Alabama Supreme Court to set a date for Mr. Smith's execution by lethal injection.

11.     By order dated September 30, 2022, the Alabama Supreme Court set Mr. Smith's execution for November 17, 2022.

12.     The State unsuccessfully attempted to execute Mr. Smith by lethal injection on November 17, 2022, but aborted the attempt because ADOC was unable to set intravenous ("IV") lines through which it could inject Mr. Smith with the lethal drugs.

13.     The State's failed attempt to execute Mr. Smith caused him severe physical and psychological pain that has had ongoing effects.

14.     Mr. Smith is pursuing a federal action under 42 U.S.C. § 1983 alleging that making a second attempt to execute him by lethal injection would violate his rights under the Eighth and Fourteenth Amendments to the U.S. Constitution and seeking to prohibit the State from doing so.

That action remains pending in the United States District Court for the Middle District of Alabama. *See Smith v. Hamm*, Docket No. 2:22-cv-497 (M.D. Ala.).

15.     However, a claim that "challenges the validity of [Mr. Smith's] conviction or sentence"—as opposed to a claim that challenges the method of his execution—is not available to him in a federal action brought under 42 U.S.C. § 1983. *See Nance v. Ward*, 142 S. Ct. 2214, 2222 (2022).

16.     This petition asserts just one claim—*i.e.*, the claim that is not available to Mr. Smith in his federal action under *Nance*.

17.     In this petition, Mr. Smith alleges that making a second attempt to execute him by any method would violate his rights under the Eighth and Fourteenth Amendments to the U.S. Constitution and Article, I, Section 15 of the Alabama Constitution and Mr. Smith seeks to prohibit the State from doing so.  Mr. Smith could not have asserted this claim at trial, on appeal, or while his first Rule 32 petition was pending.  The ground for Mr. Smith's claim was not and could not have been known to Mr. Smith until he experienced the consequences of ADOC's aborted attempt to execute him on November 17, 2022.

## GROUND FOR GRANTING THE PETITION

**A SECOND ATTEMPT TO EXECUTE MR. SMITH WOULD VIOLATE HIS RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 15 OF THE ALABAMA CONSTITUTION**

18.     The Eighth Amendment to the U.S. Constitution prohibits "cruel and unusual punishments."  U.S. Const. amend. VIII.  Likewise Article I, § 15 of the Alabama Constitution prohibits "cruel or unusual punishment."  Ala. Const. art. I, § 15.

4

19.     The U.S. Supreme Court has explained that "[p]unishments are cruel when they

involve torture or a lingering death." *Baze v. Rees*, 553 U.S. 35, 49 (2008) (citation and internal

quotation marks omitted).   The U.S. Supreme Court has further elaborated that "cruel" as "the

people who ratified the Eighth Amendment would have understood it" means:

> "[p]leased with hurting others; inhuman; hard-hearted; void of pity; wanting
> compassion; savage; barbarous; unrelenting," or "[d]isposed to give pain to others,
> in body or mind; willing or pleased to torment, vex or afflict; inhuman; destitute of
> pity, compassion or kindness."

*Bucklew v. Precythe*, 139 S. Ct. 1112, 1123 (2019) (quoting 1 S. Johnson, A Dictionary of the

English Language (4th ed. 1773) and 1 N. Webster, An American Dictionary of the English

Language (1828)); *see also Baze*, 553 U.S. at 49 (a cruel punishment "implies there is something

inhuman and barbarous, something more than the mere extinguishment of life").

20.     A "method of execution [that] cruelly superadds pain to the death sentence" violates

the Eighth Amendment. *Bucklew*, 139 S. Ct. at 1125.   In addition to physical pain, "[t]he modern

definition of *torture* makes clear that torture can be either physical or psychological in nature."

John D. Bessler, *Taking Psychological Torture Seriously: The Torturous Nature of Credible Death

Threats and the Collateral Consequences for Capital Punishment*, 11 NE. U. L. REV. 1, 3 (2019)

(emphasis in original).   For example, "a threat . . . can rise to the level of cruel and unusual

punishment." *Dobbey v. Ill. Dep't of Corrs.*, 574 F.3d 443, 445 (7th Cir. 2009); *see also id.*

("Mental torture is not an oxymoron, and has been held or assumed in a number of prisoner cases

to be actionable as cruel and unusual punishment . . .—imagine falsely informing a prisoner that

he has been sentenced to death." (citation and internal quotation marks omitted)); *Shanklin v. State*,

187 So.3d 734, 808 (Ala. Crim. App. 2014) ("Psychological torture can be inflicted where the

victim *is in intense fear and is aware of, but helpless to prevent, impending death*." (emphasis in

original, citation and internal quotation marks omitted)).

21.     Applying these principles, "'a series of abortive attempts at [execution]' . . . — unlike an 'innocent misadventure'—would demonstrate an 'objectively intolerable risk of harm'" in violation of the Eighth Amendment "that officials may not ignore." *Baze*, 553 U.S. at 50 (quoting *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 470–71 (1947) (Frankfurter, J., concurring); *Farmer v. Brennan*, 511 U.S. 825, 846 & n.9 (1994)).

22.     Mr. Smith's was the third consecutive execution that the State has botched or aborted all for the same reason—the inability of ADOC personnel to place IV lines in condemned people.  Before ADOC's aborted attempt to execute Mr. Smith in November 2022, it did nothing to determine what happened and why during the previous two botched executions to reduce the risk of a recurrence.  Consequently, ADOC's failed attempt to execute Mr. Smith caused him severe physical pain and psychological distress, which he continues to experience.  Attempting to execute Mr. Smith for a second time would pose an objectively intolerable risk of triggering the same harm to Mr. Smith in violation of his right to be free from cruel and unusual punishments under the United States and Alabama Constitutions.

23.     ADOC's protocol for executing condemned people by lethal injection (the "Protocol") authorizes only two methods for establishing IV access: the "standard procedure" or, if that is unsuccessful, "a central line procedure."

24.     It should be a straightforward process to establish IV access by the procedures allowed by the Protocol or to determine that neither is achievable.  According to the Emergency Nurses Association Clinical Practice Guideline for Difficult Intravenous Access, "[t]he average time requirement for peripheral IV cannulation is reported at 2.5 to 16 minutes, with difficult IV access requiring as much as 30 minutes."  ENA Clinical Practice Guideline: Difficult Intravenous Access (Revised Oct. 2015).  And "[p]atients experience increased and potentially significant pain

in association with multiple IV attempts." J. Fields, *et al.*, *Association between multiple IV attempts and perceived pain levels in the emergency department*, 15 J. Vasc. Access 514, 518 (2014); A. Bahl, *et al.*, *Defining difficult intravenous access (DIVA): A systematic review*, J. Vasc. Access 1, 1 (Nov. 2021) ("multiple venipuncture attempts sometimes required for successful [IV] insertion . . . can cause pain and anxiety for the patient").

25.     In attempting to establish IV access, ADOC botched the execution of Joe Nathan James on July 28, 2022, taking three hours to accomplish it and failed to establish IV access after nearly two hours of unsuccessful attempts during the aborted executions of Alan Eugene Miller on September 22, 2022 and Mr. Smith on November 17, 2022.

26.     ADOC did nothing after its botched execution of Mr. James and its failed execution of Mr. Miller to investigate what happened and why to prevent a recurrence.

27.     Despite Mr. James's botched execution and Mr. Miller's failed execution and having done nothing to investigate what happened and why during those executions, the State and ADOC simply moved forward with Mr. Smith's planned execution on November 17, 2022.

28.     The IV Team, other personnel in the execution chamber, and the officials outside the execution chamber, including Holman Warden Terry Raybon ADOC Commissioner, and John Q. Hamm, knew or should have known based on the difficulties that occurred during Mr. James's execution and Mr. Miller's attempted execution that the IV Team would have great difficulty establishing IV access, resulting in severe physical and psychological pain to Mr. Smith.

29.     They further knew or should have known that what they allegedly had done to Mr. Miller—as described in a pleading he filed in federal court—stated a claim for violation of the right to be free from cruel and unusual punishment guaranteed by the Eighth Amendment to the

U.S. Constitution.  *See Miller v. Hamm*, No. 2:22-cv-506, 2022 WL 16721093, at *13–15 (M.D. Ala. Nov. 4, 2022).

30.    Despite all that, they recklessly and knowingly charged ahead with deliberate indifference to Mr. Smith's rights and with the same results.

31.    In an unsuccessful attempt to establish two IV lines by the standard procedure, the IV Team jabbed Mr. Smith repeatedly, sliding the catheter needle continuously in and out his arms and hands, while ignoring Mr. Smith's complaints that they were penetrating his muscles and causing severe pain.

32.    Having failed to establish IV access by the standard procedure, the IV Team next tried to do so using a central line procedure.

33.    Sometime before midnight, the IV Team returned to the execution chamber and Mr. Smith was informed that the execution had been aborted.

34.    Mr. Smith continues to be in a great deal of physical and emotional pain from the attempted execution in November.

35.    ADOC's failed attempt to execute Mr. Smith has had chronically severe psychological consequences, including severe post-traumatic stress disorder.  In addition to difficulty sleeping, Mr. Smith's symptoms include nightmares, hypervigilance, hyperarousal, and disassociation (a defense mechanism to suppress threatening thoughts).

36.    ADOC's threat to make a second attempt to execute Mr. Smith exacerbates his symptoms and further destabilizes him.

## PRAYER FOR RELIEF

For the foregoing reasons and other such reasons as may be made upon amendment of this petition and a full evidentiary hearing, petitioner Kenneth Eugene Smith respectfully requests that the Court grant him the following relief:

(a) conduct a full evidentiary hearing at which proof may be offered concerning the allegations in this petition;

(b) provide petitioner, who is indigent, with funds sufficient to present witnesses, experts, and other evidence in support of the allegations contained in this petition;

(c) issue an order relieving petitioner of his unconstitutional death sentence following a full and complete hearing; and

(d) grant petitioner any such additional relief as just, equitable, and proper under federal and state law.

Respectfully submitted,

Andrew B. Johnson
BRADLEY ARANT BOULT
   CUMMINGS LLP
1819 Fifth Avenue
Birmingham, Alabama 35103-2104
Tel:  (205) 521-8000
Fax:  (205) 521-8800
ajohnson@bradley.com

Jeffrey H. Horowitz*
David A. Kerschner*
Robert M. Grass*
ARNOLD & PORTER KAYE
   SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Tel:  (212) 836-8000
Fax:  (212) 836-8689
jeffrey.horowitz@arnoldporter.com

9

david.kerschner@arnoldporter.com
robert.grass@arnoldporter.com

Ashley Burkett
Angelique Ciliberti
ARNOLD & PORTER KAYE
  SCHOLER LLP
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Tel:  (202) 942-5000
Fax:  (202) 942-5999
angelique.ciliberti@arnoldporter.com

*Attorneys for Petitioner Kenneth Eugene Smith*

\**pro hac vice* motion forthcoming

10

## ATTORNEY'S VERIFICATION

I swear under penalty of perjury that, upon information and belief, the foregoing is true and correct.  Executed on May 12 2023.

Respectfully submitted,

Andrew B. Johnson
BRADLEY ARANT BOULT
 CUMMINGS LLP
1819 Fifth Avenue
Birmingham, Alabama 35103-2104
Tel:  (205) 521-8000
Fax:  (205) 521-8800
ajohnson@bradley.com

*Attorneys for Petitioner Kenneth Eugene Smith*

SWORN TO AND SUBSCRIBED before me on this 12th day of May, 2023.

Notary Public

CARLA BATCHELOR
My Commission Expires
June 19, 2026

11

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 12, 2023, the foregoing was served by Electronic and U.S. Mail on the following:

Richard D. Anderson
Office of Attorney General
501 Washington Avenue
Montgomery, AL 36130
Richard.Anderson@AlabamaAG.gov

_____

OF COUNSEL

# Exhibit D

## STATEMENT OF THE FACTS

### A.   The Unrefuted Factual Allegations in the Petition

Mr. Smith's Petition seeks relief from his death sentence under the Eighth Amendment to the U.S. Constitution and Article I, § 15 of the Alabama Constitution based on the following unrefuted fact allegations.

On November 17, 2022, "[t]he State unsuccessfully attempted to execute Mr. Smith" and instead "aborted the attempt because ADOC was unable to set intravenous ('IV') lines through which it could inject Mr. Smith with the lethal drugs."  C. 39 ¶ 12.  ADOC failed to establish IV access using the only two methods authorized by its Lethal Injection Protocol—the "standard procedure" and "a central line procedure."  C. 42 ¶ 23; C. 44 ¶¶ 31–32.  "Mr. Smith's was the third consecutive execution that the State has botched or aborted all for the same reason—the inability of ADOC personnel to place IV lines in condemned people."  C. 42 ¶ 22.

"It should be a straightforward process to establish IV access by the procedures allowed by the [ADOC's] Protocol or to determine that neither is achievable," taking on average "'2.5 to 16 minutes, with difficult IV access requiring as much as 30 minutes.'"  C. 42 ¶ 24 (citation omitted). "And 'patients experience increased and potentially significant pain in

1

association with multiple IV attempts.'" *Id.* (citation omitted).  But "[i]n attempting to establish IV access, ADOC botched the execution of Joe Nathan James on July 28, 2022, taking three hours to accomplish it and failed to establish IV access after nearly two hours of unsuccessful attempts during the aborted executions of Alan Eugene Miller on September 22, 2022 and Mr. Smith on November 17, 2022."  C. 43 ¶ 25.

"ADOC did nothing after its botched execution of Mr. James and its failed execution of Mr. Miller to investigate what happened and why to prevent a recurrence" before it subsequently attempted to execute Mr. Smith.  C. 43 ¶ 26.  Instead, "the State and ADOC simply moved forward with Mr. Smith's planned execution on November 17, 2022," C. 43 ¶ 27, even though they "knew or should have known based on the difficulties that occurred during Mr. James's execution and Mr. Miller's attempted execution that the IV Team would have great difficulty establishing IV access, resulting in severe physical and psychological pain to Mr. Smith."  C. 43 ¶ 28.

The State and ADOC "further knew or should have known that what they allegedly had done to Mr. Miller—as described in a pleading filed in federal court—stated a claim for violation of the right to be free

from cruel and unusual punishment guaranteed by the Eighth Amendment to the U.S. Constitution." C. 43 ¶ 29 (citing *Miller v. Hamm*, No. 2:22-cv-506, 2022 WL 16721093, at *13–15 (M.D. Ala. Nov. 4, 2022)). "Despite all that, they recklessly and knowingly charged ahead with deliberate indifference to Mr. Smith's rights and with the same results." C. 44 ¶ 30.

"The State's failed attempt to execute Mr. Smith caused him severe physical and psychological pain that has had ongoing effects." C. 39 ¶ 13; *see also* C. 44 ¶¶ 31–33. "Mr. Smith continues to be in a great deal of physical and emotional pain from the attempted execution in November." C. 44 ¶ 34. Among other things, "ADOC's failed attempt to execute Mr. Smith has had chronically severe psychological consequences, including severe post-traumatic stress disorder. In addition to difficulty sleeping, Mr. Smith's symptoms include nightmares, hypervigilance, hyperarousal, and disassociation (a defense mechanism to suppress threatening thoughts)." C. 44 ¶ 35. "ADOC's threat to make a second attempt to execute Mr. Smith exacerbates his symptoms and further destabilizes him." C. 44 ¶ 36.

Based on those unrefuted facts, Mr. Smith alleged "that making a second attempt to execute him by any method would violate his rights under the Eighth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 15 of the Alabama Constitution" and he sought "to prohibit the State from doing so."  C. 40 ¶ 17.

### B.     The Circuit Court Decision

The State moved to dismiss the Petition on July 28, 2023.  C. 58. Mr. Smith opposed the State's motion on August 11.  C. 75.  About five hours after Mr. Smith submitted his opposition, the circuit court issued an order denying Mr. Smith's claim and dismissing the Petition ("Order").  C. 20.  The Order does not address or even acknowledge any of the arguments raised in Mr. Smith's opposition.

### C.     Court of Criminal Appeals Proceedings

Mr. Smith appealed the circuit court's decision.  This Court affirmed the circuit court's summary dismissal of the Rule 32 Petition. *Smith*, 2023 WL 8506490.  Mr. Smith now seeks rehearing.

4