IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| KENNETH EUGENE SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:23-cv-656-RAH |
| ) | [WO] |
| JOHN Q. HAMM, *et al.*, ) | |
| ) | |
| Defendants. ) | |

# **ORDER**

The Eleventh Circuit Court of Appeals remanded the case to this court for the limited purpose of "entertain[ing] Smith's motion to supplement the record[,]" and "to permit the State to submit additional evidence in response to Smith's new evidence." (Doc. 84.) The Eleventh Circuit asked the court "to determine whether the new evidence would change the previous factual findings or conclusions of law in its January 10, 2024 order denying Smith's request for a preliminary injunction." (*Id.*)

The court incorporates its previous factual findings and conclusions of law (*see* doc. 69) and will grant both parties' respective motions to supplement the record with new evidence (docs. 86, 87). The Defendants' new evidence includes a declaration from Defendant Terry Raybon, Warden of the Holman Correctional Facility. Smith's new evidence includes: two declarations from his counsel; Smith's recent medical records detailing his complaints of vomiting and nausea to medical staff; a supplemental declaration from Dr. Robert Jason Yong, M.D.; and the second supplemental declaration of Dr. Katherine Porterfield. Smith did not include either the new Dr. Yong or Dr. Porterfield declaration in his previous motions to

1

supplement the record in this court upon which the court based its indicative ruling. Although the court will allow Smith to supplement the record with that evidence, it does so reluctantly, given the last-minute nature of the requests and the fact that the evidence could have been presented more than a week ago.

After a detailed review of Attorney Grass's declarations and Smith's medical records, Smith's purported vomiting is based entirely on his own personal reports. They have not been corroborated by anyone else. But, taking the medical records in which Smith complains of nausea and vomiting as written, he has experienced "intermittent" (doc. 87-4) nausea and vomiting this month but there is no evidence concerning when exactly, the number of times, and how close in time to Smith eating solid food or drinking liquids the vomiting occurred. Dr. Yong stated broadly that, based upon the medical records, "there is a significant risk" Smith "will experience nausea and vomiting during his execution[,]" and he said there is a connection between anxiety and "nausea/vomiting." (Doc. 87-4.) Dr. Porterfield opined, based too upon the medical records, Smith's purported vomiting is a symptom of is Post-traumatic Stress Disorder (PTSD), worsening as the execution approaches, resulting in "a substantial and serious risk" Smith "will experience nausea and vomiting during his execution[.]" (Doc. 87-5.)

Raybon, however, declared that Smith will be given his final meal before 10:00 a.m. on January 25, 2024—if he eats one at all—and he will not be allowed any solid food after 10:00 a.m.; he will be allowed clear liquids until 4:00 p.m.; and his execution will begin no sooner than 6:00 p.m., "at which point Smith will have had no solid food for eight hours and no liquids for two hours." (Doc. 86-1.)

Smith contends his recent complaints increase the risk that he will experience both nausea and vomiting during his execution and, therefore, there is a substantial risk that he will vomit into the mask and asphyxiate. In his view, the new evidence

2

suggests there is a substantial likelihood he will succeed on the merits of his Eighth Amendment claim. The court disagrees.

As before, the substantial risk of severe harm and pain Smith alleges is theoretical, possible only upon the occurrence of a cascade of unlikely events: Smith in fact vomits during the execution, precisely between the time nitrogen begins to flow and before he reaches unconsciousness, vomit remains in his mouth and throat in a sufficient volume to block his airway such that he chokes or otherwise experiences severe pain prior to his loss of consciousness or death by nitrogen hypoxia. True, there is now evidence in the record, assuming Smith's uncorroborated self-reports are true, showing Smith has experienced nausea and vomiting in the last month, but there is still no convincing evidence showing the risk of which he complains is sure or very likely to occur. The record still lacks evidence demonstrating when, where, or how much Smith might vomit during the execution, with or without the mask on, before or during the administration of nitrogen. In other words, Smith's evidence remains broad and non-specific. Dr. Yong and Dr. Porterfield's opinions concerning the likelihood Smith will vomit during the execution are undermined by Raybon's declaration concerning the time between Smith's last meal and his execution; that is, the eight-plus hours between Smith's last meal and the time of the execution. Presumably, their testimony is based on Smith consuming his last meal at 4:00 p.m., as he did before his previous execution attempt. The Defendants will implement just what Smith previously argued the Protocol lacked: a nothing-by-mouth order. The risk of substantial harm *if* Smith experiences nausea and vomiting during the execution remains speculative. And there is no new evidence showing such risk would or could be significantly reduced by Smith's alleged alternative methods of execution. Nor is there new evidence relating to Smith's argument that the mask will lack a proper seal.

Even in light of the new evidence, the court cannot conclude the Defendants' method of execution creates a "substantial risk of serious harm, an objectively intolerable risk of harm that prevents prison officials from pleading that they were subjectively blameless for purposes of the Eighth Amendment," or that Smith identified "an alternative that is feasible, readily implemented, and in fact significantly reduce[s] [the] substantial risk of severe pain" he alleges he will suffer if he becomes nauseous or vomits during the execution. *Price v. Comm'r, Dep't of Corr.*, 920 F.3d 1317, 1326 (11th Cir. 2019) (internal quotation marks and citations omitted). Smith still failed to show a substantial likelihood of success on the merits of his Eighth Amendment claim and his new evidence does not change this court's previous factual findings or conclusions of law. (*See* doc. 69.)

It is therefore **ORDERED** as follows:

1. The court construes the Defendants' *Response to Order* (Doc. 86) as a Motion to Supplement the Record, and that Motion is **GRANTED**;

2. Smith's *Renewed Emergency Motion to Supplement the Record* (Doc. 87) is **GRANTED**;

3. Pursuant to the Eleventh Circuit's request, the court concludes the new evidence does not change its previous factual findings or conclusions of law. (*See* doc. 69.)

**DONE** on this the 24th day of January 2024.

R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE