IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| KENNETH EUGENE SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:23-cv-00656-RAH |
| | ) |
| JOHN Q. HAMM, | ) |
| Commissioner of the Alabama | ) |
| Department of Corrections, | ) |
| | ) |
| and | ) |
| | ) |
| TERRY RAYBON, Warden, | ) |
| Holman Correctional Facility, | ) |
| | ) |
| Defendants. | ) |

**Defendants' Response**

Come now Defendants, by and through the Attorney General of the State of Alabama, and respond to this Court's order (Doc. 100). In response to which, Defendants submit the following:

**I.   The Oral Arguments in this Matter Demonstrate that Intervention is Unwarranted.**

As an initial matter, it is now clear that Van Pelt's motion to intervene should be denied. That motion argued for intervention pursuant to Rule 24 of the Federal Rules of Civil Procedure. (Doc. 89 at 3.) There, he relied on *Commissioner, Alabama Department of Corrections v. Advance Local Media,*

*LLC*, 918 F.3d 1161 (11th Cir. 2019). But *Advance Local Media* also speaks to the importance of timeliness. *Id.* at 1171 (one factor is length of time intervenor "knew or reasonably should have known of his interest in the case"). Contrary to Van Pelt's arguments that he could not have known to intervene until December 20, 2023, Van Pelt should have known since at least November 21 that the unredacted protocol was being provided to Smith pursuant to this Court's protective order and that privileged items would be filed under seal. (Docs. 22 & 23.) Yet Van Pelt first sought to intervene on January 24—the eve of Smith's scheduled execution—at a point when the parties were engaged in expedited litigation that made it impossible for the motion to be resolved prior to this matter becoming moot. Van Pelt offered no meaningful explanation as to why he could not have sought intervention when it became clear that confidentiality was at issue.

As Defendants previously argued, Van Pelt's decision to wait until over a month after expedited discovery had concluded prejudiced the Defendants because, relying on this Court's protective order, Defendants produced confidential and privileged information to Smith. Had Intervenors filed their motion in a timely manner, Defendants would have had the opportunity to litigate—and appeal—this issue *prior* to producing the unredacted protocol and other privileged information that was entered into the record here. *In re: Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1246 (11th Cir. 2020) (order modifying protective order is appealable

2

because once a party "learns the appellants' private facts, they cannot be concealed again," and "the order is effectively unreviewable on appeal from the final judgment"). That prejudice would warrant this Court's denial of the motion to intervene in any circumstances, but it is doubly significant now.

Van Pelt's motion to intervene was couched in lofty terms, citing the "rights of the public" and relying on "the public right of access" and the public's "interest in accessing these records to ensure the continued integrity and transparency of our governmental and judicial offices." (Doc. 89 at 5–7.) But at oral argument, it became clear that Van Pelt's *actual* interests were far less lofty. He made no secret of the fact that he *did not* seek these records for the purpose of "ensuring" anything on the public's behalf. Rather, he sought them for his own use and advantage in a proposed lawsuit. Indeed, as Van Pelt's counsel conceded:

> THE COURT:      So your goal in obtaining access to these is to explore a potential challenge to nitrogen hypoxia on behalf of your client—
>
> MR. PALOMBI:   Yes, Your Honor.
>
> THE COURT:      —rather than the public in general and for the world to see?
>
> MR. PALOMBI:   Yes, Your Honor.

(Doc. 99, R. 5.) Lest there be *any* doubt that this proposed intervention is not about concern for the public good, Van Pelt made it clear that in lieu of unsealing the record, he would be happy to be *bound by the protective order*. (*Id.* at 23.) Which

3

is to say, Van Pelt wants to get and use the sealed information for private purposes, even if the public *never learns what was sealed*. As such, it is clear that granting Van Pelt access to the sealed documents would *not* "likely promote understanding of a historically significant event." *Advance Loc. Media, LLC*, 918 F.3d at 1169. Consequently, one of the critical factors for allowing intervention and unsealing is absent in this case.

In this context, it begins to look as if Van Pelt's decision to wait until immediately before Mr. Smith's execution to attempt intervene was a *strategic* decision. Relying on the protective order, Respondents divulged sensitive and confidential information to Mr. Smith without seeking review of this Court's discovery order. Should Van Pelt's efforts succeed, Respondents and other litigants will be discouraged from placing reliance on this Court's protective orders, but will, instead, likely engage in protracted appeals of discovery matters.

At bottom, Van Pelt is not seeking to vindicate the public's right to know, but rather is seeking *prelitigation discovery*—abusing the intervention process to conduct precisely the sort of "fishing expedition" that the bar on prelitigation discovery is intended to prevent. As the Eleventh Circuit has explained, "in civil cases generally, a party is not entitled to discovery before an action is brought—indeed, he may not seek discovery until after he has not only filed a complaint, but a well-pleaded one." *United States v. Cuya*, 964 F.3d 969, 973 (11th Cir. 2020).

Van Pelt has not pleaded any complaint at all, much less a well-pleaded one. Moreover, if this Court grants his belated attempt to intervene, Van Pelt will be able to conduct his "fishing expedition" without having to either file a complaint or show good cause. This Court should not permit Van Pelt's gamesmanship to succeed, but should instead deny Van Pelt's motion to intervene and deny his request to unseal records.

## II.  Privileged Materials

In accordance with this Court's order, Defendants identify the following items that were filed under seal, subject to this Court's protective order, along with the grounds for sealing the items. In addition to the reasons set forth below, Defendants hereby adopt and incorporate by reference those reasons and arguments regarding privilege and confidentiality set forth in the response to Van Pelt's motion to intervene (Doc. 95) and that were advanced in opposition to Smith's discovery motions and in support of the protective order that issued in this matter.

### A.  Exhibits

#### 1.  Plaintiff's Hearing Exhibits (Doc. 99)

a.  **Exhibit 1: Unredacted ADOC Execution Protocol.** This document should remain sealed and marked highly confidential. The unredacted protocol contains highly sensitive security information regarding the movements of personnel and the type and location of equipment. A redacted version of this protocol is publicly available and contains all information that

5

is not subject to these confidentiality concerns. Consequently, unsealing or alteration of redactions is not warranted.

b.   **Exhibit 26: Respirator user manual.** This document should remain sealed and marked highly confidential. Unsealing or releasing this document would directly reveal the manufacturer of the respirator selected for use by the State of Alabama for carrying out nitrogen hypoxia executions. Revealing that information would prejudice the State's ability to obtain equipment necessary for carrying out lawful executions. Moreover, revealing such information would have an inevitable chilling effect on the willingness of other suppliers and/or manufacturers to supply ADOC with needed equipment.

c.   **Exhibit 27: Declaration of Dr. Joseph Antognini.** This document is marked highly confidential. Specific portions of Dr. Antognini's declaration (paragraphs 10, 19 fn.1, 21, 24) contain sensitive information regarding the flow rates for administration of nitrogen gas that pose a security risk. Consequently, Dr. Antognini's declaration should remain sealed.

D.   **Exhibit 28: Defendants' Responses and Objections to Interrogatories.** This document appears to have been marked highly confidential by Smith, but it does not contain any confidential information in its body. Consequently, this document (but not its attachment) could be unsealed.

e.   **Exhibit 29: Attachment "A" to Defendants' interrogatory responses.** This document was created in response to an interrogatory advanced by Smith. It does not constitute a memorialization of any formal order or ranking of individuals or dictate when executions may or will be sought. It was marked confidential because it contains personal information regarding individuals in custody. However, Defendants do not seek to maintain the confidentiality of this information.

f. **Exhibit 30: Deposition Transcript of Defendant Hamm, 12/12/23.** This document should remain marked highly confidential and remain under seal. Both questions and responses throughout this document contain quotations of, and information regarding, the unredacted ADOC execution protocol and other confidential matters. Disclosure of that information would compromise the safety and security of ADOC facilities and impair the State of Alabama's ability to carry out executions in an orderly manner.

g. **Exhibit 31: Deposition Transcript of Cynthia Stewart, 12/14/23.** This document should remain marked highly confidential and remain under seal. Both questions and responses throughout this document contain quotations of, and information regarding, the unredacted ADOC execution protocol and other confidential matters. Disclosure of that information would compromise the safety and security of ADOC facilities and impair the State of Alabama's ability to carry out executions in an orderly manner.

h. **Exhibit 33: Deposition Transcript of Dr. Antognini, 12/15/23.** This document should remain marked highly confidential and remain under seal. Both questions and responses throughout this document contain quotations of, and information regarding, the unredacted ADOC execution protocol and other confidential matters. Disclosure of that information would compromise the safety and security of ADOC facilities and impair the State of Alabama's ability to carry out executions in an orderly manner.

i. **Exhibit 34: ADOC safety document.** This document should remain under seal and marked confidential. This document was a non-public document produced in discovery, was not central to Smith's claims, and would not aid the public in understanding Smith's execution or these proceedings.

j. **Exhibit 36: Respirator specification sheet**. This document should remain sealed and marked highly confidential. Unsealing or releasing this document would directly reveal the manufacturer of the respirator selected for use by the State of

Alabama for carrying out nitrogen hypoxia executions. Revealing that information would prejudice the State's ability to obtain equipment necessary for carrying out lawful executions.

k. **Exhibit 37: ADOC safety document.** This document should remain under seal and marked confidential. This document was a non-public document produced in discovery, was not central to Smith's claims, and would not aid the public in understanding Smith's execution or these proceedings.

l. **Exhibit 38: Defendants' response to Smith's requests for production.** This document was designated by Smith as highly confidential but does not contain in its body any information that is not in the public domain. Respondents do not object to the unsealing of this exhibit.

j. **Exhibits 47–50: Volunteer videos.** These exhibits are marked highly confidential. They should remain so and remain under seal. These recordings depict the interior of the execution chamber and the equipment used, and could reveal the identity of persons not parties to this lawsuit. Visual depictions of the spaces and equipment used presents heightened risk of creating security risks that are simply not presented to any similar degree by witness memories of having seen such spaces or equipment. This is why government and private entities may have restrictions on photography or videography in places that are otherwise open to the public. Further, disclosure of the identities or visual depictions of non-parties who assisted in the preparation of Respondent's case could only be used "for such illegitimate purposes as to promote public scandal[.]" *F.T.C. v. AbbVie Prod. LLC*, 713 F.3d 54, 62 (11th Cir. 2013).

2. **Defendants' Hearing Exhibits (Doc. 99)**

   a. **Exhibit 1: Declaration of Dr. Joseph Antognini.** This document is marked highly confidential. Specific portions of Dr. Antognini's declaration (paragraphs 10, 19 fn.1, 21, 24) contain sensitive information regarding the flow rates for administration of nitrogen gas that pose a security risk.

8

Consequently, Dr. Antognini's declaration should remain sealed.

b.      **Exhibit 2: Supplemental Declaration of Dr. Joseph Antognini.** This document is marked highly confidential. Specific portions of Dr. Antognini's declaration (paragraph 7) contain sensitive information regarding the flow rates for administration of nitrogen gas that pose a security risk. Consequently, Dr. Antognini's declaration should remain sealed.

c.      **Exhibit 12: Declaration of James R. Houts.** This document is marked highly confidential. Specific portions of Mr. Houts's declaration (paragraph 4) contain sensitive information regarding the flow rates for administration of nitrogen gas that pose a security risk. Consequently, Mr. Houts's declaration should remain sealed.

d.      **Exhibits 12–23: Video files depicting assessments of the respirator and system, including video depictions of non-party volunteers wearing the respirator.** These exhibits are marked highly confidential. They should remain so and remain under seal. These recordings depict the interior of the execution chamber and the equipment used, and could reveal the identity of persons not parties to this lawsuit. Visual depictions of the spaces and equipment used presents heightened risk of creating security risks that are simply not presented to any similar degree by witness memories of having seen such spaces or equipment. Further, disclosure of the identities or visual depictions of non-parties who assisted in the preparation of Respondent's case could only be used "for such illegitimate purposes as to promote public scandal[.]" *AbbVie Prod. LLC*, 713 F.3d at 62.

e.      **Exhibits 45–52: Video files depicting assessments of the respirator and system, including video depictions of non-party volunteers wearing the respirator.** These exhibits are marked highly confidential. They should remain so and remain under seal. These recordings depict the interior of the execution chamber and the equipment used, and could reveal

9

the identity of persons not parties to this lawsuit. Visual depictions of the spaces and equipment used presents heightened risk of creating security risks that are simply not presented to any similar degree by witness memories of having seen such spaces or equipment. Further, disclosure of the identities or visual depictions of non-parties who assisted in the preparation of Respondent's case could only be used "for such illegitimate purposes as to promote public scandal[.]" *Id.*

      f.      **Exhibit 53: Deposition of Dr. Philip Nitschke.** Both questions and responses throughout this document contain quotations of, and information regarding, the unredacted ADOC execution protocol and other confidential matters. Questions and responses regarding those matters were designated as highly confidential and should remain so designated and protected by this Court's protective order. Disclosure of that information would compromise the safety and security of ADOC facilities and impair the State of Alabama's ability to carry out executions in an orderly manner.

**B.    Pleadings**

1.    **Doc. 31: Second Amended Complaint.** The public version of Smith's Second Amended Complaint contains a single redaction on page 23 in a quotation from the unredacted ADOC nitrogen hypoxia protocol. The passage at issue implicates security concerns regarding the movement of personnel and the conduct of executions. The redacted portion of the quotation is not relevant to Smith's claims, and unsealing this document would not serve the public interest or increase understanding of Smith's claims or their resolution. This pleading should remain sealed and marked highly confidential.

2.    **Doc. 44: Smith's Response to MTD.** The public version of this document contains multiple redactions. On pages 38 and 42–43, references to the list of inmates who have elected nitrogen hypoxia are redacted. As discussed above, that list was made confidential because it contains non-public information regarding inmates who are not parties to this action. On pages 46–47 and 49, references to a confidential ADOC safety document are redacted. Those redactions do not materially affect the public's ability to understand Smith's

10

claims. Further, because the confidential documents referred to should remain sealed, unsealing or alteration of this filing is not warranted.

3.     **Doc. 44, Ex. 5.** This document is the list of inmates who have elected nitrogen hypoxia. For the reasons above, it should remain sealed.

4.     **Doc. 44, Ex. 8.** This document is the internal ADOC safety document referred to above. For the reasons above, it should remain sealed.

5.     **Doc. 54: Smith's response re: motion to compel.** The public version of this document contains redacted quotations of Dr. Antognini's declaration, which, for the reasons above, should remain sealed.

6.     **Doc. 54, Ex. 1.** This document is the deposition testimony of Defendant Hamm, which, for the reasons above, should remain sealed.

7.     **Doc. 54, Ex. 3.** This document is the declaration of Dr. Antognini, which, for the reasons above, should remain sealed.

8.     **Doc. 54, Ex. 5.** This document is the declaration of Jennifer Parker, which, for the reasons above, should remain sealed.

9.     **Doc. 65: Smith's post-hearing brief.** The public version of this document contains a redaction of the previously referenced list of inmates who have elected nitrogen hypoxia on page 9. For the reasons above, that list should remain sealed. On page 26 and 27, excerpts from the respirator manual are redacted. For the same reasons that the manual itself should remain sealed, this document should remain sealed. On page 31, a reference to the flow rate employed for nitrogen hypoxia executions is redacted. This reference should remain redacted for the same reasons as prior references to the flow rate. On pages 38–39, there is a redacted excerpt from an internal ADOC safety document referred to above. For the reasons above, it should remain sealed.

11

## CONCLUSION

For these reasons and those previously asserted in Defendants' opposition to the motion to intervene (Doc. 95), this Court should deny Van Pelt's motion to intervene and to unseal the sealed records in this matter.

Respectfully submitted,

Steve Marshall,
*Attorney General*

***/s/ Richard D. Anderson***
Richard D. Anderson
*Assistant Attorney General*

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: **Angelique A. Ciliberti, Ashley Brook Burkett, Jeffrey Hutton Horowitz, Robert M. Grass, Andrew Burns Johnson, Leslie S. Smith, John Palombi,** and **Spencer J. Hahn.**

*s/ Richard D. Anderson*
Richard D. Anderson
*Assistant Attorney General*

ADDRESS OF COUNSEL:

Office of the Attorney General
Capital Litigation Division
501 Washington Avenue
Montgomery, AL 36130
Office (334) 353-2021
Fax (334) 353-8400
Richard.Anderson@AlabamaAG.gov